## THE SAGUACHE.

### MEYER v. UNITED STATES et al.
### No. 294.

Circuit Court of Appeals, Second Circuit.
June 3, 1940.

John T. Cahill, U. S. Atty., of New York City, and Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y. (Myron H. Avery, Sp. Asst. to U. S. Atty., of Washington, D. C., of counsel), for United States.

Lucien V. Axtell, of New York City (Silas B. Axtell, of New York City, and Dominick Blasi, of Brooklyn, N. Y., of counsel), for William Herbert Meyer, libellant.

Before L. HAND, AUGUSTUS N. HAND, and PATTERSON, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal and a cross-appeal from a final decree upon a libel in admiralty filed by a seaman to recover for personal injuries. The pleading sets forth three causes of action.

The first is to the effect that on the high seas, while the libellant was working as a

fireman on the Steamship Saguache, he was ordered to clean and paint the fire-room, that the place where he was required to work "was extremely hot, without ventilation and almost at a point of suffocation * * * that thereafter he became very sick, had a cough, was unfit for duty and in an extremely run down and debilitated condition, and he thereafter developed tuberculosis"; that libellant's illness and resulting disease was due to negligence of the respondents in failing to provide him with a safe place to work and in compelling him to perform the above duties under the conditions mentioned. The second cause of action is to the effect that the respondents neglected to provide him "with proper medical and surgical treatment and attention". The third cause of action asserts a claim for maintenance and cure for a reasonable time after the termination of the voyage.

The trial judge granted a decree allowing libellant $1500 upon the third cause of action and dismissing the first two causes of action based on negligence. The United States appealed from the amount awarded upon the third cause of action, and the libellant filed cross-assignments of error attacking the disposition of the first and second causes of action.

We hold that the dismissal of the causes of action founded on negligence was proper, but that the claim to recover damages for failure to provide maintenance and cure was not established.

The libellant Meyer signed articles for a voyage on the S. S. Saguache from Galveston to Breman, Rotterdam and Texas City. He testified that after he left Galveston, and while the vessel was at sea, he was directed to wash paint in the fireroom. He made no objection to doing this but did complain to the second engineer who had charge of the boiler-room that it was very hot. He said that he perspired profusely and went under the ventilators to get cool, caught a cold and as a result he claimed to have contracted tuberculosis. He testified that after the ship reached Bremen, her first port of call, and while she was there he was very sick, but that after leaving Bremen he resumed duty as a fireman when the ship was en route to Rotterdam. On arriving at Rotterdam he consulted a doctor who examined him with a stethoscope and told him he had a slight bronchial trouble, should rest for a few days and would be all right. Four or five days after

leaving Rotterdam, where he had lain in his bunk three or four days, the engineer asked him to go to work because the ship was short one wiper and on the way home he cleaned the engineroom, polished the hand-rail, cleaned some of the places on the bulkhead that were dirty and did some light painting. He was weak when he arrived at Galveston and was sent to the Marine Hospital on November 9, 1925, where he was treated until February 6, 1926, leaving for an interval of about a week without permission. About February 7, 1926, he was transferred to a Marine Hospital for tuberculosis at Fort Stanton, New Mexico, where he remained for a year and two weeks and his tuberculosis seemed to be arrested. He then secured employment on the U. S. S. S. Volunteer on which he remained for about six months, after leaving this vessel stayed ashore awhile, was then employed for about five months on the M/S Crown City, and on July 31, 1928, went to the Marine Hospital at New Orleans where he remained for over a month. He thereafter worked for several weeks in the autumn of 1928 on the Standard Oil Tanker Thomas H. Wheeler, which he left in November 1928. He then went to the Marine Hospital at Ellis Island where he remained from November 14, 1928 to January, 1929.

On January 12, 1926, the libellant was discharged at his own request without permission from the Marine Hospital at Galveston. February 22, 1927, he was discharged for disciplinary reasons from the Marine Hospital at Fort Stanton. He was likewise discharged about October 16, 1928, from the New Orleans Marine Hospital, and in January, 1929 from the Ellis Island Marine Hospital for disciplinary reasons.

 It seems clear from the foregoing that the libellant was given repeated hospital treatments. On what theory he can claim that he was not afforded adequate maintenance and cure after leaving the Galveston Hospital without permission and after being discharged from the Fort Stanton Hospital for disciplinary reasons and then shipping on another vessel we cannot imagine. A seaman cannot obtain an award for maintenance and cure where he has declined hospital treatment calculated to improve his condition. Calmar Steamship Corporation v. Taylor, 303 U.S. 525, 531, 58 S.Ct. 651, 82 L.Ed. 993; Marshall v. International Mercantile Marine Company, 2 Cir., 39 F.2d 551, 553; The Po-

chasset, 1 Cir., 295 F. 6, 10. Nor is he entitled to such an award when his conduct at the hospitals has been the equivalent of a rejection of treatment. Even were psychological reasons beyond his control responsible for his conduct at the various hospitals—an assertion made by libellant without supporting record references—the respondent cannot be held to a duty greater than that of tendering adequate hospitalization; and that duty has been discharged

■ The causes of action based on negligence have likewise not been substantiated. We can see no ground for holding that it was negligent to have a seaman do cleaning or painting in the fireroom or that it was an unsafe place to work. It cannot be said that a seaman ought not to be directed to do cleaning in the fireroom because he will get in a profuse perspiration. When he went out under the ventilating system and subjected himself to a draft and caught the cold which he thinks resulted in tuberculosis he did this without any compulsion on the part of his employer. Moreover, the work which he did in cleaning and painting when he resumed work after the vessel left Rotterdam was done with knowledge neither on his part, nor on the part of the ship's officers that he had tuberculosis. In that port he had been sent by the captain to a doctor who examined him and told him that he "had a slight bronchial trouble and * * * should rest up for a few days and would be all right." On the return voyage from Rotterdam he did only light work. (Record p. 56.) It was first discovered that he had tuberculosis when he was examined at the Marine Hospital at Galveston in November, 1925. He left that hospital at his own request on January 12, 1926, in an improved condition. Upon returning to the Galveston Hospital after an absence of a week he was transferred about February 7, 1926, to the hospital at Fort Stanton where he remained for more than a year and was discharged improved. We can find nothing in the record showing neglect to care for this seaman properly. He never was forced to work at times when the officers knew that he could not safely perform services. Moreover, it is doubtful whether he, and not other workmen, cleaned or painted in the engineroom during the outward voyage from Galveston. But in any event he was never asked to perform labor which seemed likely to endanger his health, and the light work required of him on the voyage back to Texas is not shown to have aggravated his condition.

Decree modified so as to dismiss the third cause of action and otherwise affirmed; no costs.