**VAN CAMP SEA FOOD CO., Inc., et al. v. NORDYKE.**

No. 10392.

Circuit Court of Appeals, Ninth Circuit.

Feb. 11, 1944.

Rehearing Denied April 5, 1944.

Lasher B. Gallagher, of Los Angeles, Cal., for appellants.

Andersen & Resner, George R. Andersen, and Herbert Resner, all of San Francisco, Cal., and Charles J. Katz, of Los Angeles, Cal., for appellee.

Before WILBUR and STEPHENS, Circuit Judges, and McCORMICK, District Judge.

McCORMICK, District Judge.

This appeal is from a judgment of the District Court on the verdict of the jury for damages in favor of the appellee, an injured seaman.

The complaint in the court below contained two causes of action for damages, both being expressly maintained under the provisions of section 33 of the Act of June 5, 1920,[1] sometimes called the Jones Act.

The first cause of action substantially alleged that at all applicable times plaintiff seaman was a resident of San Jose, California; that the defendant Van Camp Sea Food Co., Inc., a corporation, had its office in San Pedro, California, and that defendant Antonio Francisco was a resident of San Pedro, California; that throughout the involved period of time Francisco was acting as the agent of the corporate defendant and that each of the defendants owned and operated the American fishing vessel "Madeirense;" that on August 28, 1941, plaintiff was hired by the defendants and signed on the "Madeirense" as a radio operator-fisherman; that while the vessel was at sea

---

[1] Sec. 33 of Act of June 5, 1920, Chap. 250, 41 Stat. 1007, 46 U.S.C.A. § 688.

and engaged in fishing near the Galapagos Islands, on or about September 12, 1941, the plaintiff while engaged in the act of fishing for tuna off the "Madeirense" suffered a fracture of the distal end of his right ulna and that such injury was very painful and disabled the plaintiff from performing any further duties aboard the vessel as a fisherman; that there was no doctor aboard the "Madeirense;" that notwithstanding the injury sustained by the plaintiff, the defendants failed and refused to take the plaintiff to the nearest port where adequate medical attention could be procured until the "Madeirense" completed its voyage in normal course and arrived at San Diego, California, on October 10, 1941; that due to the alleged carelessness and negligence of the defendants in failing seasonably to provide plaintiff with proper and adequate medical care and attention within a reasonable time after the injury it was necessary to perform a surgical operation upon the fractured ulna and resect a portion of the head of the ulna; that immediate, proper and competent medical attention and facilities could have been provided to plaintiff by the defendants within a reasonable time after plaintiff sustained his injury; that due to the carelessness and negligence of the defendants in failing to so provide proper and adequate medical care and attention, the plaintiff has suffered injury, pain and disability in addition to that which would have resulted from the initial and original injury; that as a result of the defendants' negligence plaintiff sustained general damages in the sum of $15,000.

The second cause of action incorporated all of the allegations of the first cause of action and substantially alleged additionally that as a result of the pleaded carelessness and negligence of the defendants the plaintiff was forced to obtain the services of a competent doctor to care for and attend his injury at an expense unknown definitely at the time of the commencement of the action but ascertainable later; that, also, as a result of the defendants' alleged carelessness and negligence the plaintiff was unable to perform work for a period of three months, to his further damage in the sum of $900.

The defendants' joint answer in the court below denied all the allegations in the complaint of carelessness or negligence and also of any damages; denied that defendant Antonio Francisco was at any time the owner or operator of the "Madeirense;" denied that the plaintiff was hired by defendant Francisco or that the relationship of employer and employee existed between him and the plaintiff; alleged that defendant Francisco at all times mentioned in the first cause of action of the complaint was employed on the "Madeirense" as sailing master; admitted that on or about September 12, 1941 the "Madeirense" was engaged in fishing near the Galapagos Islands and at that time and place aboard said vessel plaintiff was engaged in fishing for tuna, and that while so engaged in said act of fishing he suffered a fracture of the distal end of the right ulna and that such injury disabled plaintiff from performing any further duties aboard the "Madeirense" as a fisherman during the balance of the fishing trip; the defendants also denied that the plaintiff had any right to maintain the action under the provisions of the Jones Act.

The jury found for the plaintiff upon both causes of action, awarded $3750 as damages on the first cause of action, and $440 on the second cause of action.

Applicants primarily contend that the "law side of the District Court of the United States" had no jurisdiction to hear and determine either cause of action alleged in the complaint.

█ We think that appellants misconceive the scope of the Jones Act whereby without any interference with the seaman's rights in admiralty new and enlarged rules for the recovery of compensatory damages for personal injuries may be invoked by a seaman for the tortious acts of his employer in the course of the employment. Cortes, Adm'r, v. Baltimore Insular Line, Inc., 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368; De Zon v. American President Lines, Ltd., 318 U.S. 660, 63 S.Ct. 814.

█ In actions where the averments of the seaman include the essential factual requirements specified in section 688, 46 U.S. C.A., no allegation or proof of diverse citizenship is necessary to confer jurisdiction on the District Court.

█ The Jones Act is a remedial statute and as such it should be liberally construed to accomplish the declared object of the legislation, "to provide for the promotion and maintenance of the American merchant marine." This desideratum must be attained in consonance with the plain meaning of the wording of the statute.

The sole jurisdictional provision incorporated in the Act is that "Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located." This requirement is a modification of that imposed by the Judiciary Act, 1 Stat. 76, 77, relating to other suits of a civil nature at common law, and when fulfilled confers on a District Court of the United States the requisite authority to hear and determine an action at law for damages by an injured seaman regardless of his citizenship.[2]

The appellee based and presented his entire action in the court below upon the Jones Act and in each cause of action he relied upon the same negligent acts of his employers. It was the seaman's right to recover in one action for all impairment due to his employers' negligence, including necessary medical expenses and loss of wages resultant from his employers' negligence. The method and procedure which the seaman adopted in the court below is not unlike the conventional action at law for damages for personal injury wherein the plaintiff pleads special damages separately from the compensation which is demanded and assessable for the disability, pain and suffering per se.

The complaint alleged and demanded general damages in the sum of $15,000, and the method adopted by the seaman of pleading the aggregate of additional special damages in a second cause of action at an amount not in excess of $3,000 in no manner impaired the jurisdiction of the District Court under the Jones Act to, as was done in the court below, hear and determine the whole case.[3]

Appellants next argue that the court below was without jurisdiction under the Jones Act for the reason that the master of the vessel was joined with the Van Camp Sea Food Co., Inc., the injured seaman's employer. We have earlier in this opinion referred to the allegations in the complaint that plaintiff was hired by defendants as radio operator-fisherman on the "Madeir-ense" and that defendants were the owners and operators of the "Madeirense."

The record before us discloses that appellee testified in the court below that the preliminary negotiations relating to his employment were carried on with the master of the vessel and so far as he knew the vessel was owned in part by the company and partly by the master and several crew members. The testimony of the master himself was to the effect that he had "an ownership share of $5,000 in the boat" and that "Van Camp also had a part." From this uncontradicted testimony and in the absence of evidence to the contrary it is clear that there was sufficient evidence from which the jury could properly have found and the implied finding in the verdict shows the jury did find that the master was a co-employer of appellee at the time of the injury.

Numerous assignments of error on the part of the district judge upon the admissibility of evidence have been made by the appellants. Particular objections were made to the introduction of a wireless message addressed to the master of the "Madeirense" by the United States Marine Hospital at San Francisco, California, and various statements by a doctor at San Cristobal Island and by a pharmacist's mate from a United States destroyer.

Immediately after suffering the fracture appellee reported the injury to the master, who "tried to manipulate it one way and another by yanking it in order to pull it in place." There were no medical facilities aboard the vessel other than minor first-aid supplies, and suffering considerable pain, appellee several hours after the injury radioed the United States Marine Hospital at San Francisco, California, a description of the injury and requested advice. The hospital soon after radioed the vessel's master that the description was that of an imperfect broken wrist bone, gave instructions for its care and advised the master to "make for the nearest port for X-ray and proper medical care." The master denied having received the message although appellee testified he had. The vessel however continued to fish for at least two days and

---

[2] Kuhlman v. W. & A. Fletcher Co., 3 Cir., 20 F.2d 465. See, also, Peters v. Detroit & Cleveland Nav. Co., D.C., 24 F.2d 454; Johnson v. Panama R. Co., D.C., 277 F. 859, affirmed, 2 Cir., 289 F. 964, affirmed 264 U.S. 375, 44 S.Ct. 391, 68 L. Ed. 748.

[3] Cortes v. Baltimore Insular Line, Inc., 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368; Pacific Steamship Co. v. Peterson, 278 U.S. 130, 49 S.Ct. 75, 73 L.Ed. 220; Nolan v. General Sea Foods Corp., 1 Cir., 112 F.2d 515; Stevens v. R. O'Brien & Co., 1 Cir., 62 F.2d 632.

then proceeded to San Cristobal Island, where the record indicates it was required to go in any event for an inspection by the Ecuadorian government. Nordyke testified that at San Cristobal Island a doctor in the presence of the master, after looking at Nordyke's arm, stated that the bone was fractured and that he had no X-ray or any equipment to handle such an injury as the town of San Cristobal had a population of about fifty persons, and the doctor advised that under the circumstances Nordyke should proceed immediately to where there were X-ray facilities and where he could receive proper medical attention. The jury evidently accepted appellee's testimony of such statements by the doctor in the master's presence, although disputed by the master's testimony. However, the doctor did remove the splint and bandage which previously had been placed on Nordyke's arm by a crew member in accordance with the wireless from the Marine Hospital and substituted a new one. Thereafter the vessel left San Cristobal Island and instead of making for the nearest port again proceeded to fish. Later that day the vessel met a United States destroyer whose pharmacist's mate came aboard the "Madeirense" and in the presence of the master, according to appellee's testimony, stated that a bone was broken and that the injured seaman should be taken to Panama, a nearby port, or some other port as soon as possible. He told the captain of the "Madeirense" that if it were left for any amount of time it would set and might cause further complications. Although the master testified that nothing was said to him by the pharmacist's mate, the jury evidently accepted appellee's testimony. The pharmacist's mate then removed the splint placed on the injured member by the doctor at San Cristobal Island and likewise substituted one of his own. Thereafter the vessel continued to fish until about October 1, 1941 and made port at San Diego, California on October 10, 1941, some 26 days from the date of the original injury.

■ We fail to see any prejudicial error in the introduction into evidence of the wireless message or the various statements made by the doctor at the Island or the pharmacist's mate. Appellants in their answer expressly admitted that appellee suffered the fracture and the evidence reveals that the instructions contained within the wireless message relating to the treatment of the injury were substantially carried out by the master. Appellants apparently object principally to those portions of the message and the statements relating to the necessity of making for the nearest port for X-ray and proper medical care as "The entire basis of plaintiff's claim for damages as set forth in the first cause of action is his contention that the master of the vessel should have proceeded within a few days after the injury to some port where an X-ray of plaintiff's wrist might have been produced." However appellee's complaint at the time of trial was not predicated on the failure of the master to procure the X-ray, but that the vessel and its owners and operators failed to take him, an employee injured in the course of his employment, as soon as possible to a place where proper medical treatment could be obtained; further, the jury was instructed that the only duty resting upon the vessel's master was to exercise that amount of judgment which would have been exercised under all the circumstances shown by the evidence by an ordinarily prudent person.

Error is also assigned in the admission into evidence of testimony with reference to hospital and medical expenses incurred by Nordyke inasmuch as he had been given a master's certificate entitling him to receive without obligation care and treatment at the facilities of the United States Public Health Service. Although there was some conflict in the testimony, Nordyke testified that shortly after making port at San Diego he availed himself of a doctor at the local Public Health Service, who, on the morning of Saturday, October 11, 1941, told Nordyke that he, the doctor, would be unable to "work on" Nordyke until the week following, but the doctor did instruct Nordyke to obtain X-ray photographs of the injury. Such X-rays were obtained by Nordyke when he visited the Public Health Service at San Diego, California. Shortly thereafter Nordyke left for San Jose, California, and immediately upon his arrival there on October 13, 1941 he placed himself under his physician's care, who thereupon had X-rays of the fracture made and who within a few days placed Nordyke in a hospital for the subsequently performed surgery on his injured arm.

■ While it is true that a seaman cannot obtain an award for maintenance and cure where he has declined proffered medical treatment calculated to improve his

condition,[4] nevertheless, if an injured seaman has made a bona fide attempt to avail himself of the tendered medical treatment and under the circumstances of the case has been required to obtain appropriate treatment elsewhere he may recover from the owners of the vessel expense of maintenance and cure that was not at his disposal and seasonably obtainable through recourse to the proffered facilities.[5]

The appellee having testified in the court below without contradiction that he incurred doctors' bills and hospital charges to the amount of $190.00, and the evidence showing that he contracted such bills for medical and hospital services as a result of the failure and neglect of the defendants to provide adequate medical treatment, we think there was no prejudicial error in the reception of such bills into evidence.

Complaint is made by appellants with reference to the testimony of an admittedly qualified orthopedic specialist who had examined Nordyke a few days before the trial and who had at the examination taken a history of the injury from Nordyke and whose written report of such history was introduced into evidence by appellee. While the doctor's testimony relating to the history of the injury, as well as his writing memorializing it should have been excluded, we find no error warranting a reversal of this case because of the reception of such matter. The doctor's testimony of what Nordyke told him at the examination, as well as the doctor's written memorial of Nordyke's statements, consisted of mere repetitious testimony of admitted facts or of incidents which had been otherwise properly received in evidence. Under the record before us the error was harmless.

Nor was error committed in admitting into evidence the testimony of this same doctor with reference to what would be regarded as proper treatment of Nordyke for the suffered injury. Here again appellants predicate their assignment of error principally upon the proposition that Nordyke's complaint was based primarily upon the failure of the vessel's master to obtain X-rays of the injured member and, further, that Nordyke was attempting to show that the standard of care with reference to the treatment of the injury was that of an orthopedic specialist. But appellee made no such claims and the testimony of the doctor was directed to no such proposition. The portions of the testimony attacked related to the ideal time for treatment of a fracture, and the doctor qualified his testimony by stating that the proper treatment was to "get to a place where you can get the right treatment." Furthermore, the jury was instructed that "the only duty which rested upon the master of the vessel in the case at bar was to exercise that amount of care and judgment which would have been exercised under all the circumstances shown by the evidence by an ordinarily prudent person."

We think there is no merit in the contention that it was prejudicial error to admit the testimony of one of appellee's witnesses who testified in the court below that after being injured aboard the "Madeirense" he had received the services of an orthopedic surgeon at the Gorgas Hospital at the Canal Zone, which is some three and a half days' run from where Nordyke suffered his injury. Appellants contend that proof of the existence in June, 1942 (the time of the injury to the witness), of facilities to treat such an injury permits an improper inference that such facilities were available in September, 1941, when Nordyke was injured, but we think the deduction is not unreasonable when it is considered that the Canal Zone Hospital has been a widely known nationally established institution with extensive medical facilities, dedicated by Congress since the year 1928 to perpetuate the name and memory of General Gorgas of Panama Canal fame.

Finally, appellants complain of certain instructions of the court to the jury, the striking out of matter in certain of the proposed instructions requested by the defendants in the court below relating to the care to be exercised by the vessel's master toward the injured seaman, and to the sufficiency of the evidence to support either cause of action in the court below.

---

4 Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 531, 58 S.Ct. 651, 82 L.Ed. 993; Meyer v. United States et al., 2 Cir., 112 F.2d 482, 483; Marshall v. International Mercantile Marine Co., 2 Cir., 39 F.2d 551; The Bouker No. 2, 2 Cir., 241 F. 831.

5 Calmar Steamship Corp. v. Taylor, supra, 303 U.S. at page 531, 68 S.Ct. 651, 82 L.Ed. 993; The Balsa, 3 Cir., 10 F.2d 408. See, also, The Magdapur, D.C.N.Y., 3 F.Supp. 971; Robinson v. Swayne & Hoyt, Ltd., et al., D.C.Cal., 33 F.Supp. 93.

908

▮ The court instructed the jury fully and fairly on all the law applicable to the case, and in view of the instructions earlier mentioned in this opinion relating to the duty resting upon the master under the circumstances of the case, appellants proposed instructions were surplusage and were properly not given by the trial judge. Furthermore, the court properly instructed the jury that "Whether there was a duty on the part of the master of the vessel upon which plaintiff was injured to terminate the fishing enterprise and proceed at once to the nearest port must be decided with reference to whether the injury sustained by the plaintiff would have appeared to an ordinarily prudent master to have been serious, the care that could and was given the plaintiff on board the fishing vessel, the proximity of the port, the consequences of delay to the interests of the crew, the care and attention which was actually procured by the master for the plaintiff, and all other circumstances shown by the evidence which would have reasonably influenced an ordinarily prudent master of a vessel such as the 'Madeirense' in deciding what was reasonably required. If upon a consideration of all the evidence in the case you cannot say that the plaintiff has proved by a preponderance thereof that the master thereof negligently failed to furnish or procure that kind of care and attention which appeared to be reasonably necessary in the light of all the facts which were known or which should, in the exercise of reasonable care, have been known to the master at the time he made his decision, then there was no negligence on the part of the master; and if you so find from all the evidence, your verdict must be in favor of the defendant on the first cause of action." [6]

▮ The contention that the instructions to the jury assume that appellants were negligent has no merit. The jury was properly charged that "If the plaintiff has proved to your satisfaction, and by a preponderance of the evidence, under all the facts and circumstances of the case, that the defendant failed to supply him with the proper medical care and attention at the earliest reasonable opportunity and that as a result thereof the use and strength of his hand and wrist have been lost in whole or in part due to such negligent failure on the part of the defendant, the plaintiff has made out a case and is entitled as a matter of law to damages from the defendants."

▮ Several other assignments of error in the instructions to the jury are made by the appellants; but considered as a whole, without isolating or separating portions of the charge, we think that the instructions to the jury fairly and adequately presented the issues to the jury for its determination.[7] That is all that the law requires.

▮ An examination of the entire record reveals ample evidence to support the jury's verdict in both causes of action, and finding no reversible error, the judgment is affirmed.

---

6 The Iroquois, 194 U.S. 240, 24 S.Ct. 640, 48 L.Ed. 955; Whitney et al. v. Olsen, 9 Cir., 108 F. 292; The Fullerton, 9 Cir., 167 F. 1.

7 Grand Trunk Western R. Co. v. H. W. Nelson Co., 6 Cir., 116 F.2d 823; Cohen v. Evening Star Newspaper Co., 72 App. D.C. 258, 113 F.2d 523; Galloway v. General Motors Acceptance Corp., 4 Cir., 106 F.2d 466; Gardner et al. v. Dantzler Lumber & Export Co., 5 Cir., 98 F.2d 478.