**MORIARTY v. OLIVER J. OLSON & COMPANY et al.**

No. 24268.

District Court, N. D. California, S. D.

Jan. 27, 1947.

Gladstein, Andersen, Resner & Sawyer and Herbert Resner, all of San Francisco, Cal., for libelant.

Hoge, Pelton & Gunther, John H. Black and Edward R. Kay, all of San Francisco, Cal., for respondent.

PRAY, District Judge.

The above-entitled cause is known as a seaman's libel in personam, seeking damages, maintenance and cure, under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., the Jones Act, 46 U.S.C.A. § 688, and Public law 17, 78th Congress, Act March 24, 1943, 57 Stat. 45 and under 28 U.S.C.A. § 837, without prepayment of costs.

Libelant alleges personal injuries received while employed by the respondent

as a seaman on board the S. S. John L. Sullivan, a merchant ship, owned by the United States and operated by the Oliver J. Olson Company. The acts of negligence alleged took place on the voyage from New York to Manchester, England, from April 21, 1944 until May, 1944, while libelant was a fireman and water tender on said ship, and which occurred by allowing smoke to fill the engine room, where he was then working, all of which was due to defective machinery and equipment, and compelled libelant to inhale the smoke and fumes occasioned thereby, and which he alleges was a primary and proximate cause of tuberculosis which he incurred during the voyage to England. That thereafter he received medical attention, and now claims that he is entitled to maintenance money, and an award for further medical care.

Employment and service of libelant on the above-named ship were admitted by the respondent, the United States, but the other allegations aforesaid were denied. On the main facts relating to faulty conditions in the engine room of the ship, the two sole witnesses, the libelant and F. J. Dodd, chief engineer of the ship, by deposition, are directly in conflict as to extent and duration of the smoke condition in the engine room, libelant said the smoke there continued all the way to England, and Mr. Dodd said the smoke in question lasted about two or three hours, and that he was down there in the engine room while it lasted and that it was not necessary for him to wear a mask; that the ventilators took the smoke out, and that the spark arrester was removed to give more draft, and that there was no other occasion when the smoke was thick. The ventilation system was described by Mr. Dodd in reply to a question as to how he got the smoke out of the engine room, as follows: "Why, there is ventilators on the upper part, and also on the boiler room, and then there is big ventilators, you know, where the air comes down and circulates it and drives it out." He said that he usually went down into the engine room once a day, and also stated that if there was any smoke, he could see it from the deck; and if he were not on deck, word would be sent to him; libelant admits that Mr. Dodd came down to the engine room "on and off". These are in substance the principal facts relating to the smoke-filled engine room. As to alleged defective machinery and equipment, Mr. Dodd admitted the boilers needed cleaning and that this was accomplished one at a time in the Manchester Canal, but that the smoke situation was taken care of as explained in his deposition, and herein referred to. Mr. Dodd at the time of giving his testimony was living in retirement and no longer going to sea.

This ship was one of a convoy carrying freight to England, and operating under war conditions, protected by a Naval escort. Libelant said the room occupied by him as sleeping quarters was stuffy and close, and the port holes were closed at night, and that conditions were uncomfortable and unsanitary. No expert testimony was submitted on this subject or that of defective machinery and equipment.

The testimony of the two physicians, one testifying on the part of the libelant and the other on the part of respondent, is likewise in conflict; the one claiming that the physical condition of libelant is due to the smoke and fumes encountered in the engine room as a strong contributing factor, and the other that such condition could not have been caused in that manner; that tuberculosis is caused by a germ, and that whether he was on shipboard or elsewhere the result would have been the same; that he needed hospitalization and should receive such treatment as is provided for such cases at one of the Government hospitals for the treatment and care of tuberculosis. Libelant was afforded an opportunity for and received such treatment when he entered the United States Marine Hospital for the treatment of tuberculosis at Fort Stanton, New Mexico, but he refused the treatment proffered him at this institution and voluntarily left against the advice and warning of the physicians and surgeons in charge, and stated at the trial that he had not entered any other hospital or received treatment from any other physicians since leaving the Marine Hospital at Fort Stanton. Dr. Trimble testified that, in his opinion, even then, at the time the case was on

trial, libelant could be cured if he would consent to medical treatment. From the testimony it would seem that libelant's obstinacy in refusing medical aid is partly if not wholly responsible for his present physical condition.

From the evidence it appears that libelant, from May 18th, 1943 to November 18th, 1944, had served on six different ships, and on two of them following his service on the Sullivan, before an X-ray was taken and his physical ailment discovered. After libelant's service on the Sullivan, he shipped out on the S. S. Wm. Ellery in August, 1944, and returned in October, 1944; after that, about November 10th, 1944, he entered the service of the S. S. James Monroe, and later, not feeling well, submitted to an X-ray examination at the Marine Hospital at Norfolk, which showed tuberculosis—the next report gave pulmonary tuberculosis moderately advanced, and a week later the report described the disease as far advanced. He was discharged from further service on the S. S. Monroe, and given a letter directing him to go to the tuberculosis hospital on Staten Island for treatment, but instead of going there he went home, and about two weeks later decided to go to the United States Marine Hospital at Fort Stanton, New Mexico. When counsel asked libelant if he could not have obtained all the treatment he wanted at the hospital (referring to the Marine Hospital at Fort Stanton) he answered "Yes." Mr. Dodd said libelant made no complaint to him of illness, or asked for any relief from duty, nor did anyone make any complaint to him about smoke in the engine room.

The Court has reviewed the testimony of both physicians, Drs. Goldman and Trimble; the latter said the disease in question is caused by a germ and not by smoke, and that smoke does not cause the infection to become active or aggravate it; exposure to smoke might make one cough but will not precipitate active disease; he said these types of latent tuberculosis could not be discoveed without an X-ray examination, which the evidence shows libelant never had previous to the time of his final service on the S. S. Monroe, although he had been given physical examinations before that which did not show symptoms of tuberculosis. Dr. Goldman claimed that the smoke encountered by libelant would have a tendency to aggravate the disease—would be an important factor in making a clinically inactive disease an active one. This doctor was asked to assume that libelant (according to Mr. Dodd) was subjected to smoke in the engine room for only two hours, also that he wore a mask, and under such conditions to state how that would influence his opinion. He replied: "I would say that would be a negligible factor." The physicians in testifying were required to take into account the conditions as described by libelant and also by the chief engineer; their own examinations of libelant; the hospital records and X-rays; the smoke in the engine room, the stuffy condition of his sleeping quarters, his cigarette smoking habit, and any other pertinent evidence admitted in the case. Both doctors agreed that he needed medical care and attention at some hospital or institution specializing in tuberculosis cases, and the prognosis was that he might have to remain there and receive treatment for a period of two years.

It seems quite clear that a finding of negligence on the part of respondent, in view of the proof submitted, would not be sustained by a preponderance of the evidence; consequently for this, and for the further reason, that no casual relation between tuberculosis and the smoke in the engine room, or libelant's service on the S. S. Sullivan, has been established by a preponderance of the evidence, in the opinion of the court, the decision here would necessarily have to be in favor of the respondent.

On the question of maintenance since libelant declined the opportunity for treatment at the tuberculosis hospital on Staten Island and left the Marine Hospital for tuberculosis at Fort Stanton contrary to medical advice, and on the further question of an allowance for expense of medical treatment which he asserts was not beneficial to him at Fort Stanton, it appears from the facts heretofore recited, and an examination of the authorities applicable,

that the court would lack authority to grant the allowances requested in either instance. Unquestionably libelant was in need of the medical aid afforded him, and according to the testimony of the physicians who examined him, is still in need of medical treatment, but his refusal to follow the advice of medical authority on the subject of tuberculosis, refusal to submit to treatment and voluntarily leaving the hospital against medical advice, and at the time of trial still refusing, or neglecting to submit to treatment from physicians or at some hospital near his home, would seem to indicate that he does not believe he is in need of medical aid or else has become wholly indifferent to consequences. The letter of Dr. Miller, of the hospital at Fort Stanton, to libelant's father was admitted in evidence and disclosed that libelant's "condition was the same as when previously reported; that he had persistently refused surgical treatment; other than that he has been given the best of care. In view of his nostalgia a trip to his home will not be detrimental." Since he had decided definitely to go there does not seem to have been very much the hospital authorities could do about it. His own testimony and the hospital records show when and how he left.

It was held in Rey v. Colonial Navagation Co., 2 Cir., 116 F.2d 580, in a fireman's action for indemnity under Jones act for failure to provide suitable sleeping quarters for crew as result of which the fireman allegedly contracted tuberculosis, the burden was on the fireman to establish by a preponderance of the evidence that the negligence of the ship owner caused or was a substantial factor in causing the illness. Jones Act, 46 U.S.C.A. § 688.

On the subject of maintenance and cure libelant cited a case from the Ninth Circuit, Van Camp Sea Food Co. v. Nordyke, 9 Cir., 140 F.2d 902, 906, 907, in which the court said: "While it is true that a seaman can not obtain an award for maintenance and cure where he has declined proffered medical treatment calculated to improve his condition, nevertheless, if an injured seaman has made a bona fide attempt to avail himself of the tendered medical treatment and under the circumstances of the case has been required to obtain appropriate treatment elsewhere he may recover from the owners of the vessel expenses of maintenance and cure that was not at his disposal and seasonably obtainable through recourse to the proffered facilities." It does not seem necessary again to refer to the facts in the instant case to show that the exception to the rule above stated does not apply here; libelant's own statements would exclude the exception in his case.

It was held in Meyer v. United States, et al., 5 Cir., 112 F.2d 482, 483: "A seaman can not obtain an award for maintenance and cure where he has declined hospital treatment calculated to improve his condition. Calmar Steamship Corporation v. Taylor, 303 U.S. 525, 531, 58 S.Ct. 651, 82 L.Ed. 993; Marshall v. International Mercantile Marine Co., 2 Cir., 39 F.2d 551, 553; The Pochasset, 1 Cir., 295 F. 6, 10. Nor is he entitled to such an award when his conduct at the hospitals has been the equivalent of a rejection of treatment. Even were psychological reasons beyond his control responsible for his conduct at the various hospitals—an assertion made by libellant without supporting record references— the respondent can not be held to a duty greater than that of tendering adequate hospitalization; and that duty has been discharged." See also Baker v. Waterman S. S. Corporation, 5 Cir., 103 F.2d 987, 988.

Complaint has been made because of the lapse of time from trial to decision; the facts are that the trial occurred April 30th and May 1st, 1946; libelant's brief was filed August 22nd, 1946; and respondent's brief on September 25th; and on 16th of December following, the Judge, who heard the case, received the files, transcript and briefs from the Clerk at San Francisco, who wrote that counsel for libelant had stated that he did not intend to file a reply brief.

Findings of fact and conclusions of law may be submitted accordingly, also form of decree. Exceptions are allowed, but no costs.