## CALMAR STEAMSHIP CORP. *v.* TAYLOR.

No. 594.   Argued March 9, 1938.—Decided March 28, 1938.

*Mr. Frank A. Bull,* with whom *Messrs. O. D. Duncan* and *Russell T. Mount* were on the brief, for petitioner.

*Mr. Abraham E. Freedman,* with whom *Mr. Howard M. Long* was on the brief, for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

The question for decision is whether the duty of a ship owner to provide maintenance and cure for a seaman falling ill of an incurable disease while in its employ extends to the payment of a lump sum award sufficient to defray the cost of maintenance and cure for the remainder of his life.

Respondent was a member of the crew of petitioner's steamship "Losmar." Following an injury to his foot, allegedly caused by stubbing his toe against an object lying on the floor of the boiler room where he was employed, respondent was found to be afflicted with thrombo angiitis obliterans, otherwise known as Buerger's disease, an incurable malady of the veins and arteries. It is attended by interruptions of the blood stream, with consequent malnutrition of the affected parts, producing lesions, deteriorating changes of the tissues, and gangrene. Medical treatment and amputation of the affected parts may halt the advance of the disease, but its manifestations are likely to recur in other parts of the body, and medical opinion is that the disease tends to be progressive and may ultimately cause death. Care and treatment at frequent intervals, with periodic medical observation of the patient, are of aid in arresting its progress.

After February 12, 1935, when respondent was first hospitalized, he was given treatment at various marine hospitals, in the course of which he suffered four amputations upon the right foot and leg. On October 3, 1935, after his leg had been amputated below the knee, he

was discharged to the "Outpatient Department to return at intervals for reëxamination, and later to be fitted with an artificial limb." Petitioner, from time to time, paid respondent small sums for maintenance and cure, continuing to do so until March 10, 1936, when they totaled $487. At about this time respondent brought the present suit in admiralty to recover maintenance and cure, and, in another count, for petitioner's negligence in causing the injury. The trial court found that petitioner was not negligent, but held that respondent is entitled to recover the cost of maintenance and medical treatment so long as such treatment is necessary, and that as his affliction is incurable, there should be a lump sum award based on his life expectancy. Its decree awarding a recovery of $7000 was affirmed by the Court of Appeals. 92 F. (2d) 84. Because of the importance of this question, we granted certiorari, 302 U. S. 681, but denied a cross petition to review the Court of Appeals' affirmance of the decree for the ship owner on the negligence count, *post*, p. 643.

The ancient duty of a vessel and her owner to provide maintenance and cure for seamen injured or falling ill while in service was recognized and, to some extent, defined by this Court in *The Osceola*, 189 U. S. 158, 175. See also *Chelentis* v. *Luckenbach S. S. Co.*, 247 U. S. 372; *Pacific S. S. Co.* v. *Peterson*, 278 U. S. 130. The duty, which arises from the contract of employment, *Cortes* v. *Baltimore Insular Line*, 287 U. S. 367, 371, does not rest upon negligence or culpability on the part of the owner or master, *id.*; *The City of Alexandria*, 17 Fed. 390 (D. C.); *The Mars*, 149 Fed. 729, 731 (C. C. A.); *Sorensen* v. *Alaska S. S. Co.*, 243 Fed. 280 (D. C.), aff'd 247 Fed. 294 (C. C. A.); *Brown* v. *The Bradish Johnson*, Fed. Cas. No. 1992, 1 Woods 301 (C. C.), nor is it restricted to those cases where the seaman's employment is the cause of the injury or illness. *The Wensleydale*, 41

Fed. 829 (D. C.); *The Bouker No. 2,* 241 Fed. 831 (C. C A.). It is not an award of compensation for the disability suffered, *The Wanderer,* 20 Fed. 140, 143 (C. C.), although breach of the duty may render the owner liable for the consequential damages suffered by the seaman. *Cortes* v. *Baltimore Insular Line, supra,* 371. The maintenance exacted is comparable to that to which the seaman is entitled while at sea, *The Henry B. Fiske,* 141 Fed. 188, 192 (D. C.); *The Mars,* 145 Fed. 446, 447, (D. C.), aff'd 149 Fed. 729 (C. C. A.); *The Bouker No. 2, supra,* 836, and "cure" is care, including nursing and medical attention during such period as the duty continues. *Whitney* v. *Olsen,* 108 Fed. 292, 297 (C. C. A.) and cases cited; *Daugherty* v. *Thompson-Lockhart Co.,* 211 Fed. 224, 227 (D. C.).

In *The Osceola, supra,* this Court reserved the point whether the duty of maintenance and cure extends beyond the duration of the voyage, and that question, so far as this Court is concerned, remains an open one. The reasons underlying the rule, to which reference must be made in defining it, are those enumerated in the classic passage by Mr. Justice Story in *Harden* v. *Gordon,* Fed. Cas. No. 6047 (C. C.): the protection of seamen, who, as a class, are poor, friendless and improvident, from the hazards of illness and abandonment while ill in foreign ports; the inducement to masters and owners to protect the safety and health of seamen while in service; the maintenance of a merchant marine for the commercial service and maritime defense of the nation by inducing men to accept employment in an arduous and perilous service.

It is plain that in many cases these purposes will not be accomplished if the owner's duty to furnish maintenance and cure ends with the voyage. If the injury or illness outlasts it, the seaman may still be left helpless and uncared for in a foreign port. Even if he is returned

to the home port the inducement to the owner to care for the health and safety of seamen during the voyage and the inducement to seamen to take the necessary risks of a hazardous calling will be materially lessened. The chances of their prompt restoration to a service whose preservation is in the public interest, will be diminished if the right to maintenance and cure ends with the voyage.

Tacit recognition is accorded these considerations in the great number of cases in the lower federal courts sustaining the right to maintenance and cure for a reasonable time after the voyage—"reasonable time" being appraised with reference to the special circumstances of each case. *The Bouker No. 2, supra,* 835, and cases cited at 834. It is true that in most of these cases the efficient cause of the injury or illness was some proven act of the seaman in the service of the ship, but there are others in which it was deemed enough that he was incapacitated when subject to the call of duty as a seaman, and that his incapacity continued after the voyage had ended. *The Bouker No. 2, supra,* 835; *The Wensleydale, supra.*

We accept as supported by evidence, the finding of the district court that respondent's disease and the amputations which he suffered were not caused by the injury to his foot. But we think that even in such a case, whether the seaman is at home or abroad, his right to maintenance and cure may outlast the voyage. The policy underlying the obligation, so cogently stated by Justice Story in *Harden* v. *Gordon, supra,* and the liberality with which admiralty courts have traditionally interpreted rules devised for the benefit and protection of seamen who are its wards, *Robertson* v. *Baldwin,* 165 U. S. 275, 287; *Cortes* v. *Baltimore Insular Line, supra,* 377; *The Arizona* v. *Anelich,* 298 U. S. 110, 123, call for some extension of the duty beyond the term of service. The practical inconvenience and the attendant danger to seamen in the application of a rule which would en-

courage the attempt by master or owner to determine in advance of any maintenance and cure, whether the illness was caused by the employment, are manifest.

There remain the questions whether in the case of a chronic illness the duty continues so long as medical attendance and care are beneficial, until death if the need lasts so long, and whether a lump sum may be awarded to defray the cost of meeting the anticipated need.

In answering the first we lay to one side those cases where the incapacity is caused by the employment. As to them considerations not present here may apply, which might be thought to require a more liberal application of the rule than we think is called for in this case. Cf. *Reed* v. *Canfield,* Fed. Cas. No. 11641 (C. C.), with the comments of Judge, later Justice Brown in *The J. F. Card,* 43 Fed. 92 (D. C.), and see those of Judge Hough in *The Bouker No. 2, supra,* 834. But we find no support in the policies which have generated the doctrine for holding that it imposes on the ship owner an indefinitely continuing obligation to furnish medical care to a seaman afflicted with an incurable disease, which manifests itself during his employment, but is not caused by it. So far as we are advised it is without support in the authorities. We can find no basis for saying that, if the disease proves to be incurable, the duty extends beyond a fair time after the voyage in which to effect such improvement in the seaman's condition as reasonably may be expected to result from nursing, care, and medical treatment. This would satisfy such demands of policy as underlie the imposition of the obligation. Beyond this we think there is no duty, at least where the illness is not caused by the seaman's service.

The award of a lump sum in anticipation of the continuing need of maintenance and cure for life or an indefinite period, is without support in judicial decision. Awards of small amounts to cover future maintenance

and cure of a kind and for a period definitely ascertained or ascertainable have occasionally been made. *The Mars,* 149 Fed. 729, 730 (C. C. A.); *Wilson* v. *Manhattan Canning Co.,* 205 Fed. 996, 997 (D. C.). But the award here seems to us to be inconsistent with the measure of the duty and the purposes to be effected by its performance. The duty does not extend beyond the seaman's need. *Raymond* v. *The Ella S. Thayer,* 40 Fed. 902, 903 (D. C.); *The J. F. Card, supra,* 95; *The Bouker No. 2, supra,* 835; *The Santa Barbara,* 263 Fed. 369, 371 (C. C. A.); *Stewart* v. *United States,* 25 F. (2d) 869, 870 (D. C.); *Marshall* v. *International Mercantile Marine Co.,* 39 F. (2d) 551, 553 (C. C. A.); cf. *Holt* v. *Cummings,* 102 Pa. 212; *contra, Reed* v. *Canfield, supra.* The amount and character of medical care which will be required in the case of an affliction, as well defined even as Buerger's disease, cannot be measured by reference to mortality tables. Moreover, courts take cognizance of the marine hospital service where seamen may be treated at minimum expense, in some cases without expense, and they limit recovery to the expense of such maintenance and cure as is not at the disposal of the seaman through recourse to that service. *The Bouker No. 2, supra,* 835; *Marshall* v. *International Mercantile Marine Co., supra,* 553, and cases cited. Furthermore, a duty imposed to safeguard the seaman from the danger of illness without succor, and to safeguard him, in case of illness, against the consequences of his improvidence, would hardly be performed by the payment of a lump sum to cover the cost of medical attendance during life.

The seaman's recovery must therefore be measured in each case by the reasonable cost of that maintenance and cure to which he is entitled at the time of trial, including, in the discretion of the court, such amounts as may be needful in the immediate future for the maintenance

and cure of a kind and for a period which can be definitely ascertained.

The courts below have made no findings sufficient to enable us to fix the amount which respondent is entitled to recover. The decree is accordingly reversed and the cause remanded to the district court for further proceedings in conformity with this opinion, and without prejudice to any later suit by respondent to recover maintenance and cure to which he may then be entitled.

*Reversed.*

Mr. Justice Black is of opinion that the judgment should be affirmed.

Mr. Justice Cardozo took no part in the consideration or decision of this case.