## DELPY v. CROWLEY LAUNCH & TUG-BOAT CO. et al.

### No. 8829.

Circuit Court of Appeals, Ninth Circuit.

Sept. 26, 1938.

S. T. Hogevoll and Thelma Zulch, both of San Francisco, Cal., for appellant.

R. O. Purvis and Walter Jacobsen, both of San Francisco, Cal., for appellees.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a decree dismissing, without leave to amend, a tugmaster's amended libel in personam against the tug's owner. The libel alleges that he was the master of a tugboat of the Tugboat Company on the Bay of San Francisco, during the several years of his employment thereon and up to his discharge by the Company. It further alleges that the master was injured in the use of a ladder supplied the ship by the owner, which had a missing lower rung which it was claimed made the ship unseaworthy in that regard. The injury alleged arose from a fall due to the absence of the rung, causing a bruise in the master's left leg which made it open to infection which, in turn, caused a permanent stiffening of the leg and continued pain.

The master also alleges that the deck crew of the tug consisted of himself and a watchman, and that in the course of his employment in towing a lighter astern, attached to the tug by a cable, the watchman was required to leave the tug and serve on the lighter; that an additional member of deck crew should have been on his tug, and that had the watchman or some other sailor been present it would have been his duty to assist the master in descending the defective ladder; and that with such assistance the injury would not have occurred. The libelant charges also unseaworthiness in this regard as a failure to supply a sufficient crew.

It is alleged that the respondent Tugboat Company continued the employment of the master in his injured condition for a period of over two years after his return from the Marine Hospital, several months after the accident, and until August 13, 1937; that during that period he was paid his full wages, in the earlier portion $190 per month, and for the last 18 months $205 per month. It is also alleged that after his discharge on August 13, 1937, and up to the present time, the pains in his leg caused by his injury have so disabled him that he can obtain but part time work. While it is not alleged that the part time employment does not maintain him, there is a sufficient allegation of absence of cure.

It is obvious that these facts describe two causes of action. One is for injury arising from unseaworthiness of the vessel for which the master could have sued the

Tugboat Company on the 5th day of September, 1934, and, if successful, recover in damages for the full amount of his injury.

The libel was not filed until the 5th day of October, 1937, 2 years and 10 months and 4 days after the cause of libel arose. Exceptions to the libel were filed which were sustained with leave to amend. The amended libel now before us states as a reason for the long delay in bringing the suit that "the libelee made threats to discharge him if he brought suit to enforce his rights, and told him that the job meant more to him than a lawsuit. From the conversation between libelant and libelee about the lawsuit libelant got the impression that he would always have steady employment with the libelee provided he did not bring suit".

We are unable to find in this statement of the Tugboat Company to the master a sufficient reason for delaying the libel against the Company for the unseaworthiness of the vessel. Here is no agreement or contract that if the tug master would not bring suit he "would always have steady employment with the libelee". The mere impression of the libelant as to the legal effect of the statement of the Tug Company is no excuse for the delay. He was at all times employed in the Bay of San Francisco. It is not the case of a mere seaman on a long voyage and in a strange port, where he might be peculiarly subject to the suggestion of his employers or their representatives. He was a tug master whose employment required intelligence, skill and a matured sense of responsibility, and his long employment discloses he had these qualities. The members of the admiralty bar in the port of San Francisco are known to the shipping public to be especially qualified men in the defense of seamen's rights. We cannot find it reasonable that the master should rely on his own interpretation of such a vague suggestion of future employment, when such counsel was available. In these circumstances we hold the statement attributed to the Tug Company does not warrant the laches in libeling for the alleged unseaworthiness.

■ The facts alleged present a second cause of action,—that is for maintenance and cure. The master alleges certain sums amounting to $72 expended by him for medical attendance in connection with an attempt to cure the injury to his leg. Despite this and the medical administration of several months in the United States Marine Hospital, libelant alleges he still suffers pain and his leg is stiffened from the injury, and that he is not cured.

The decree of the learned judge dismissing the libel was made prior to the decision of the Supreme Court in Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993. In that case the Supreme Court holds that there is a continuing obligation in the shipowner to provide for maintenance and cure, for the nonperformance of which the seaman has a right to libel his employer from time to time during the continuance of that obligation. It declares that the seaman is entitled to "reasonable cost of that maintenance and cure to which he is entitled at the time of trial, including, in the discretion of the court, such amounts as may be needful in the immediate future for the maintenance and cure of a kind and for a period which can be definitely ascertained." Calmar S. S. Corp. v. Taylor, supra, 525, 58 S.Ct. 651, 655.

In that case the injury occurred on February 9, 1935, and on March 28, 1938, that is over 3 years thereafter, the Supreme Court, despite the power thus declared to decree for maintenance and cure for a period after the trial "which can be definitely ascertained", in a decree sending the case below for the purpose of determining this amount, also decreed that it is "without prejudice to any later suit by respondent to recover maintenance and cure to which he may then be entitled".

We hold that the libel sufficiently states a cause of action at least concerning cure and that it is not barred by laches.

■ In the prayer of the libel, libelant asks a decree for the amount expended for his medical attention and also for such other and further relief as may be proper in the premises. We are of the opinion that in view of the liberality allowed in admiralty pleadings and particularly in sailors' cases, such a prayer for relief is sufficient to warrant a decree for maintenance and cure, despite the fact that there previously appears in the prayer libelant's request for a judgment for $10,000 for the alleged unseaworthiness of the tug. The Montezuma, 2 Cir., 19 F.2d 355; The Magdapur, D.C., 3 F.Supp. 971. It would have been better pleading to have stated the cause of

action for maintenance and cure in a separate count, but the failure to do so does not warrant a dismissal without leave to amend.

The decree is sustained insofar as it denies relief for the owner's alleged failure to furnish a seaworthy vessel, and is reversed on the cause of action for maintenance and cure, with leave to amend the libel if libelant be so advised.

Affirmed in part.

Reversed in part.