## MOEN v. ENDRESEN et al.

United States District Court
S. D. New York.

Feb. 29, 1952.

William L. Standard, New York City, by Louis R. Harolds, New York City, of counsel, for libellant.

Mahar & Mason, New York City, by Frank C. Mason, New York City, of counsel, for respondents.

EDELSTEIN, District Judge.

### Findings of Fact.

1. At all the times mentioned in the libel the libellant was employed as a seaman by the respondents Ellen Endresen and Daniel Endersen, deceased, whose estate is here represented by Judith Endresen as executrix, on the fishing vessel Norseman from about December, 1946, to about the latter part of May, 1949, and was employed as a seaman by the respondents Carl Carlsen and Bill Simpson on the fishing vessel Maridor from about June 1, 1949 to August 23, 1949.

2. At all such times The Norseman was owned, operated and controlled by Ellen Endresen and Daniel Endresen and The Maridor was owned, operated and controlled by Carl Carlsen and Bill Simpson.

3. On or about August 22, 1949, while libellant was employed as a member of the crew of The Maridor, tuberculosis of the left lung, of which the libellant had not been previously aware, manifested itself, causing him to become disabled.

4. Major et al. v. Shaver, 88 U.S.App.D.C. 148, 187 F.2d 211.

4. From August 24, 1949 to April 11, 1951 libellant was an in-patient and received treatment and medical care at the Marine Hospitals, maintained by the United States Public Health Service at Stapleton, Staten Island, Neponset, Long Island and Manhattan Beach, Brooklyn.

5. On April 11, 1951, libellant was discharged from the Marine Hospital at Manhattan Beach with his condition noted as "apparently arrested".

6. All in-patient treatment, care and maintenance between August 24, 1949 and April 11, 1951 was without any expense to the libellant.

7. Libellant's last positive culture at the Marine Hospital had been found during December, 1950, and since that time, all findings have been negative.

8. An expert on lung diseases gave uncontradicted testimony that:

(a) libellant's condition was to be regarded as "apparently arrested" for a period of one year from the date of the last positive culture, during which period libellant was disabled from performing any work whatever;

(b) thereafter the libellant was to continue with periodic medical checkups and observation for a period of five years, during which his condition was to be regarded as "arrested", in the absence of any additional positive findings or other deterioration in his condition; and

(c) libellant would be disabled from performing his usual work as a seaman during that five year interval, but could perform suitable light work, and at the expiration of the five year period he would be regarded as "cured", although he would be unable to resume work as a seaman for the rest of his life.

9. The X-rays taken on August 24, 1949 indicate that the libellant's latent tuberculosis condition existed for a period of at least six months prior to that date.

10. The libellant's latent tuberculosis condition arose sometime during libellant's employment on The Norseman, but did not become disabling until August 22, 1949, while he was working on The Maridor.

11. The reasonable value and rate of his maintenance has been stipulated as being $6 per day.

### Discussion.

█ The rule of admiralty is that it is the duty of the ship to maintain and care for the seaman after the end of the voyage only until he is so far cured as possible. Farrell v. U. S., 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850. The issue here presented is the limitation of the period. Respondent contends that when the libellant was discharged from the Marine Hospital on April 11, 1951, with his tubercular condition noted as "apparently arrested", he had obtained all the maintenance and cure to which he was entitled, on the ground that he was not susceptible to further improvement by medical treatment. Libellant urges that liability for his maintenance and cure extends until he will be regarded medically as cured. He is not to be so regarded, according to the undisputed medical testimony, for a one year period from the date of the last positive culture, during which the condition is described as "apparently arrested", plus an ensuing five year period during which, absent deterioration, the condition is to be regarded as "arrested".

Libellant's last positive culture was found during December of 1950. For the subsequent one year "apparently arrested" interval, which expired just prior to trial, he was disabled from performing any work whatever. During this time he underwent periodic medical check-ups, and these are to continue throughout the five year "arrested" stage. There is no evidence that he has received, in the one stage, or will receive, in the succeeding stage, any medical attention beyond observation. The question is, when may libellant be considered "so far cured as possible"? His cure cannot be considered as having reached that point at any time after his discharge from the hospital while he continues to receive "treatment of a curative nature" within the meaning of the Farrell opinion. During the one year "apparently arrested" stage of the disease he was obliged to refrain from work, but, though he may never again

return to sea, he is permitted during the subsequent "arrested" period to engage in suitable light work. The medically approved course of rest and abstention from work during the former period was designed to advance his cure. Therefore, I conclude, such a course must be regarded as treatment of a curative nature, despite the absence of specific affirmative therapy at the hands of a physician. Hence, the libellant is entitled to maintenance at the stipulated daily rate from April 11, 1951 to a date one year from that day of December, 1950 when his last positive culture was found.

■■■ Libellant also claims maintenance and cure for the five year period, practically all of it subsequent to the date of trial, during which the disease is to be regarded as "arrested", on the ground that the time of future disability can be definitely ascertained. Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993. However, I find no indication of any curative treatment to be undergone during that time. He may not go to sea, but the evidence is that he may never do so. There is no evidence that he may do heavier work at the termination of the five year interval than during it. Further, he may, and presumably will undertake gainful employment prior to his technical date of "cure", and if he does, of course, he may not recover maintenance for that time. Finally, the distinction between the terms "arrested" and "cured" applied to tuberculosis under the testimony given appears to be more significant as a matter of diagnostic procedure and terminology than as a matter of description of actual physical condition, on the basis of medical experience that tuberculosis which has been "arrested" for five years may reasonably be regarded as "cured". There is no testimony that the two stages are physically distinct or progressive; rather, it seems, the one is a cautious and conditional manner of describing the status of recovery while the other is a description without condition at a time when it is felt that caution in terminology is no longer necessary. Of course, if the condition of relapse occurs during the conditionally described period, then obviously libellant has not been cured.

And if he receives further treatment of a curative nature, he may recover in a new proceeding the amount expended for such treatment and for maintenance while receiving it. See Farrell v. U. S., supra, 336 U.S. at page 711, 69 S.Ct. 707, 93 L.Ed. 850.

Conclusions of Law

1. Libellant is entitled to maintenance at the rate of $6 per day during his period of out-patient treatment, convalescence and rehabilitation, until such time as he reaches his maximum cure, if that date can be ascertained with reasonable certainty.

2. Libellant is entitled to maintenance from the date of his discharge as an in-patient on April 11, 1951, until a date one year from that day of December, 1950, when his last positive culture was found. If the terminal date cannot be agreed, the parties may have the opportunity of placing evidence of it on the record.

3. This determination is without prejudice to a new proceeding by libellant to recover maintenance and cure in the event he is required in the future to undergo treatment of a curative nature.

4. A decree may be submitted incorporating the foregoing conclusions and including libellant's costs and disbursements.