**KEEGAN v. UNITED STATES et al.**
Adm. No. 18512.

United States District Court,
E. D. New York.
June 8, 1953.

Herman E. Cooper, New York City (Richard Gyory, New York City, of counsel), for libellant.

Frank J. Parker, U. S. Atty., Brooklyn, N. Y. (C. John Dirosse, New York City, of counsel), for respondents.

GALSTON, District Judge.

This is a libel in admiralty for personal injuries allegedly sustained by Michael J. Keegan, the libellant, while employed as a seaman aboard the S. S. Charles H. Marshall. The respondent, the United States of America, owned and operated the S. S. Charles H. Marshall. The respondent, Polarus S. S. Co., operated and managed the Marshall under a general agency agreement with the United States. The libel as against the respondent, Polarus S. S. Co., was dismissed by order of this court, dated August 12, 1950.

The first cause of action alleges that on or about October 29, 1945, while the Marshall was in the Philippine Islands, libellant, acting under orders, was engaged in cement brushing a water tank, and fell and came into contact with a bolt, which resulted in serious injury to him. It is alleged that the injuries were caused solely through the failure of the respondent in failing to furnish libellant with a safe and seaworthy vessel and appliances; in failing to furnish him with a safe place to work; and in failing to furnish adequate lights. Damages in the amount of $10,000 are asked.

A second cause of action is alleged for maintenance and cure, in the amount of $5,000.

The libellant testified, at the trial, that on October 29, 1945, he was engaged in cement brushing the interior of a water tank in one of the holds of the Marshall, which was then lying at anchor in the port of Damortis, Philippine Islands. He stated that he was standing on a wooden plank ten to twelve feet long, about a foot across and one inch thick, which was being used as a scaffold and that when he was about in the center of the plank, it bent under his weight and cracked, causing him to lose his balance and fall, striking his chest against an iron bolt used to secure the radiators on the bottom of the ship. According to the libellant, he examined the planking after the alleged accident and found it old and rotted. He also testified that there were other crewmen assigned to the work of cement brushing the tank, but that at the time of the accident he was the only one working, the others having already quit for the day.

According to the libellant's testimony, the accident occurred about 5:00 o'clock in the afternoon. He stated that he didn't observe the injury immediately, but that it was only after washing up that he noticed a bruise and swelling just below the sternum, in the region of the solar plexus. He then went in search of the purser to report the accident. After two hours, not having found the purser, he reported to the chief mate.

The libellant was taken ashore on November 1, 1945 and entered the 360th Station Hospital in the Philippine Islands. Upon examination it was found that he had an epigastric hernia. An operation was performed to repair the hernia on November 2, 1945. He was discharged from the hospital on December 31, 1945, and returned to the United States on an Army vessel, arriving at San Pedro, California on January 21, 1946, and finally arrived in New York on January 29, 1946.

The ship's report of the alleged accident is in evidence. The purser of the Marshall on the date of the accident testified at the trial that he filled out the report on the basis of what Keegan had told him at the time. Paragraph 7 of the report states:

"Injury received: (a) Date 10/29/45 (b) Hour 11:00 A.M. (c) Place Damortis, Luzon (d) To whom first reported H. Cornfeld, Purser. (e) When Immediately"

Paragraph 9 of the report described how the accident happened:

"While working aboard this vessel Mr. Keegan incurred a ventral hernia sometime around the 29th of October. The hernia was noticed on this date, but he does not actually know when he was hurt."

The hospital entry card to the 313th General Hospital, signed by G. E. Hanna, Major

MC., dated November 1, 1945, includes the following item:

"14. Cause of Admission

"Hernia, epigastric, cause undetermined"

In his deposition the chief mate of the Marshall, Charles E. Temple, states that on the day before the libellant went to the hospital, he met the libellant at No. 2 hatch of the Marshall and that the libellant told him that he had fallen in No. 2 hold and hurt himself. According to the mate, the libellant opened his shirt and showed him the injury. His deposition states:

"Q. Will you point to this place he showed you? A. In the very pit, down between where the ribs meet, the open point in your stomach, that is above the stomach.

*　*　*　*　*　*

"A. There was a raised place, a swollen place there about the size of a hen egg, and his skin was very white. There were no bruises, no marks of any kind, and he didn't seem to be too concerned about it; and I said 'What's that', and he said—I don't remember the term, but he called it some kind of a hernia, and I was amazed that he could give it to me in a medical term, * * *. It was new to me."

The mate further testified in his deposition that there was no deep tank in No. 2 hold, and so there would be no cause for any cement brushing to be done there. He also stated that the only deep tank was in No. 1 hold, that all cement brushing the deep tanks was overtime, and that it was part of his duty to assign all overtime work. The overtime record of the libellant fails to show that he was assigned to any overtime on October 29, 1945. The last overtime recorded for Keegan is on October 24, 1945 for "Discharging ammo overside". The evidence indicates further that there were at least six other crewmen who were employed in the deep tank on October 29, 1945, cleaning and cement brushing the tanks, and who received overtime for the work.

The respondent, therefore, takes sharp issue with the libellant's claim of how the injury occurred. The evidence adduced having disclosed further that the libellant had sustained a similar injury in 1939 while employed aboard a vessel of the Moore-McCormack Lines, Inc., which, upon medical examination, was diagnosed as an epigastric hernia, and that an operation was recommended but refused by Keegan, the respondent contends that the injury for which the libellant now seeks damages is the result of the 1939 accident. In this connection Dr. Dugdale, the respondent's medical expert, testified that a protrusion resulting from a hernia condition such as the libellant had might occur and relax itself during intervening periods, but that the condition remained until it was repaired. The libellant did not offer any evidence to rebut this testimony.

Aside from the libellant's own testimony, there is no evidence to prove that the breaking of a plank was the cause of the alleged injury. Nor is there any evidence that the rotten condition of the plank alleged to have broken was ever brought to the attention of the officers of the Marshall following the alleged accident.

The libellant points to certain statements in the libellant's medical records as being corroborative of his version of the accident. For example, the "Certificate" of the 31st General Hospital, December 2, 1945, signed by James R. Flautt, Jr., 1st Lt., MC., states:

"He (Keegan) was initially admitted to the 360th Station Hospital, APO 70, at 1600 hours, 1 November 1945, at which time he gave the history that he had been working below decks on the S. S. Charles H. Marshall on the 29th of October. While engaged in cementing the interior of a water tank, he lost his footing and fell, striking his chest on a bolt * * *".

That "he lost footing" is also stated as the cause of the alleged accident in the "Abstract From Clinical Record," March 16, 1948, of the Marine Hospital in New York City. None of these statements, however, attributes the loss of footing to the breaking of a defective plank. The claim for damages for injuries is based upon the alleged negligence and fault of the re-

spondent in allowing the use of a defective plank as a scaffold. The important thing for purposes of finding liability is not that the libellant fell, but the fact that the plank broke as claimed by libellant. Yet the evidence adduced fails to disclose a single statement by the libellant in reporting the accident which attributes his fall and injury to the breaking of a plank.

It may be noted that the instant case is not the first instance in which there is variance in the libellant's story of a claimed injury. In connection with the injury sustained in 1939, Keegan declared in his deposition, taken by the respondent in the action against the Moore-McCormack Lines, Inc., that he fell off a platform and struck his chest against a sand box. In response to interrogatories propounded in the instant case, however, he stated that the injury in 1939 was caused when a flexible hose used for blowing steam through tubes "broke and struck libellant across the chest, raising a lump and welt on it."

■ Upon considering the foregoing evidence, it must be concluded that the libellant has failed to show by a fair preponderance of the credible evidence that the alleged injury was caused by any fault or negligence of the respondent. Therefore, the first cause of action will be dismissed.

■ The respondent also disputes the libellant's right to maintenance and cure under the second cause of action. The main ground of opposition is that the libellant failed to disclose the earlier injury of 1939 when he was given a medical examination before signing on for the Marshall. But it has been held that a seaman who believes himself fit for duty and signs on without any fraudulent concealment is entitled to maintenance and cure, notwithstanding a previous condition of ill health which he failed to disclose. Ahmed v. United States, 2 Cir., 177 F.2d 898.

In the instant case, the evidence discloses that the libellant signed on several vessels between the time of the 1939 injury and the time of signing on for the Marshall. He testified that the swelling resulting from the 1939 injury disappeared after about thirty days and that it gave him little or no trouble after that. As already noted, Dr. Dugdale stated that the libellant's condition might occur and relax itself periodically. He also testified that this condition was of a type that would not necessarily prevent the libellant from shipping.

In Calmar Steamship Corp. v. Taylor, 303 U.S. 525, at pages 527–528, 58 S.Ct. 651, 653, 82 L.Ed. 993, the Supreme Court declared as follows:

"The ancient duty of a vessel and her owner to provide maintenance and cure for seamen injured or falling ill while in service * * * does not rest upon negligence or culpability on the part of the owner or master, * * * nor is it restricted to those cases where the seaman's employment is the cause of the injury or illness, * * *. The maintenance exacted is comparable to that to which the seaman is entitled while at sea, * * *, and 'cure' is care, including nursing and medical attention during such period as the duty continues, * * *."

■ There is no question of the hernia condition having become apparent again on October 29, 1945, while the libellant was serving aboard the Marshall. Therefore, the libellant is entitled to an award for maintenance. Although he refused to undergo an operation as recommended in 1940, Keegan stated that another doctor had advised him that if he wore a belt the swelling "would go back". He apparently acted in good faith in relying on such advice.

Dr. Dugdale's opinion on examining the libellant was that five or six weeks of temporary disability is usual following an operation for an epigastric hernia such as libellant underwent, and that the hernia had been repaired satisfactorily with good results and no permanency.

■ The record discloses that the libellant was under medical care, furnished by the respondent until he was discharged from the Army Station Hospital at Torrance, California on January 23, 1946. They also indicate that upon his return to New York, outpatient care was furnished

by the United States Public Health Dispensary in New York from February 4, 1946, but that libellant was discharged thirty days after February 4, 1946 because of his failure to return. Since, therefore, the libellant was given medical care and maintenance during a period of at least twelve weeks, his right to maintenance must be limited to wages from November 2, 1945 until the end of the voyage.

According to the evidence, the libellant signed on as an ordinary seaman, was changed to a boatswain on October 1, 1945, and requested and received a change of rating from boatswain to ordinary seaman on October 30, 1945. Therefore, his maintenance should be based upon the wages for an ordinary seaman, which is shown to have been at the rate of $112.50 per month.

Under the second cause of action he may have a decree for $337.50.

Appropriate findings of fact and conclusions of law will be filed concurrently with this opinion.