Wilbur GILBERT, Plaintiff,

v.

MISSISSIPPI VALLEY BARGE LINE COMPANY, Defendant.

Civ. A. No. 951.

United States District Court
W. D. Kentucky,
Paducah Division.

Jan. 7, 1959.

Robert B. Reed, Paducah, Ky., for plaintiff.

John C. Shepherd, Evans & Dixon, St. Louis, Mo., Wheeler & Marshall, Paducah, Ky., for defendant.

SHELBOURNE, District Judge.

This suit was filed June 10, 1957, by Wilbur Gilbert, a seaman employed as a fireman on the steamer Ohio. The steamer Ohio is a vessel enrolled for and engaged in the business of commerce and navigation on the Ohio River and its tributaries and owned by the defendant Mississippi Valley Barge Line Company, a corporation. Jurisdiction is alleged under the admiralty law.

The plaintiff seeks to recover $4,900.85 for maintenance and cure allegedly due him by defendant by reason of an injury he sustained December 15, 1955, and its resulting consequences.

The defendant denied the material allegations of the complaint, alleged affirmatively that, on January 2, 1957, the plaintiff executed a release of all claims of whatsoever kind or nature in con-

sideration of $4,500 paid to him by defendant, and asked dismissal of the complaint.

A trial was had to the Court without a jury on November 6, 1958, since which time the parties have filed suggested findings of fact and conclusions of law and briefs in support thereof. Upon the filing of defendant's brief on December 22, 1958, the case was submitted to the Court. From the evidence heard, the Court makes the following

### Findings of Fact

(1) The plaintiff Wilbur Gilbert was employed as a fireman on the steamer Ohio and came aboard the vessel December 9, 1955. December 15, 1955, while attempting to turn a tap with a large wrench, the wrench slipped off the nut and Gilbert in some way fell and injured his head. At the time he was of the opinion that his injuries were not serious or severe; however, on or about December 17, 1955, he reported to his captain that he was unable to work by reason of his injuries and left the boat at Huntington, West Virginia, and returned to his home at Paducah, Kentucky.

When plaintiff returned to Paducah, he consulted his family physician, Dr. Charles Shields; he was later seen by Dr. S. L. French, an orthopedic specialist at Paducah, who referred him to Dr. R. L. Reeves, a Paducah physician specializing in internal medicine. Dr. Reeves caused Gilbert to be hospitalized in the Riverside Hospital at Paducah where he was examined extensively by Dr. Reeves and Dr. Errett Pace, an eye specialist. Not being able to satisfactorily diagnose plaintiff's trouble, they advised him to go, and he did go, to St. Louis, Missouri, where he was hospitalized for a week, April 17 to April 24, 1956, at the DePaul Hospital and examined by an assistant to Dr. Smolick, an eminent physician in the field of neurosurgery. Dr. Reeves was given a report of that examination, stating that no objective symptoms could be had and that no evidence of any central nervous system disease could be diagnosed.

Dr. Reeves then advised Gilbert to go to Dr. Claude McClure, a neuro-surgeon at Memphis, Tennessee. After his examination of the plaintiff on October 9, 1956, Dr. McClure advised Dr. Reeves that he was of the opinion that the man had been injured and was unable to work.

Dr. Reeves testified that he saw and examined plaintiff thereafter and gave as his opinion that Gilbert was suffering at all times, even at the time of the trial, from an intercranial lesion, causing him to veer to the right when he attempted to walk with his eyes closed. He stated that when he first saw Gilbert in March, 1956, he had a positive Romberg, which is a reflex and which indicated trouble in his central nervous system; that Gilbert had a bilateral choking of both discs, that is, an edema or swelling of the nerve head in the eye, which indicated intercranial pressure. Dr. Reeves was of the opinion that Gilbert had improved measurably but that, in November, 1958, the man was still suffering from the injury to his head.

(2) Subsequent to Gilbert's leaving the vessel Ohio at Huntington, West Virginia, on December 17, 1955, the defendant paid to plaintiff $270 in maintenance. There was no explanation in the evidence of what these payments purported to represent, whether they were for wages, expense of travel, medicine or physicians' fees. Plaintiff has alleged that he expended $970.85 in an effort to secure a cure and that his wages or maintenance from December 15, 1955, until he reaches maximum recovery, or as of May 25, 1957, would have amounted to the sum of $4,200, and he seeks to recover from the defendant the amount of $4,900.85.

(3) On January 2, 1957, the plaintiff was represented by one of his present counsel, Robert B. Reed, a practicing attorney at Paducah, Kentucky. Dr. Reeves advised Mr. Reed of his examinations and treatment of the plaintiff and of the reports received by him from the specialists in St. Louis, Missouri, and Memphis, Tennessee. Shortly prior to January 2, 1957, S. Eldridge Sampliner, an attorney of Cleveland, Ohio, special-

izing for more than 25 years in practice in the admiralty, was employed by plaintiff. Mr. Reed accompanied plaintiff to Chicago where they met Mr. Sampliner and the three negotiated a settlement with The Travelers Insurance Company, which settlement is evidenced by the following release:

"Release

"Know Ye All Men By These Presents, that I, Wilbur Gilbert, a seaman, residing at 221 Jackson, Paducah, Kentucky, understand that I am entitled to maintenance and cure as a result of the injury sustained by me on or about December 15, 1955, and acknowledging receipt of $270.00 for said maintenance and cure, while in the employ of the Mississippi Valley Barge Line Company and knowing that the Jones Act permits me to make claim against my employer for damages, for and in consideration of the sum of four thousand five hundred dollars ($4,-500.00) to me in hand paid by the Mississippi Valley Barge Line Company, the receipt of which is hereby acknowledged, remise, release, and forever discharge, and do by these presents for myself, my heirs, executors and administrators, remise, release, and forever discharge the said Mississippi Valley Barge Line Company, their successors and assigns, the several ships of the Mississippi Valley Barge Line Company, their officers and crews and in particular the ship Ohio, its master, officers, crew, owners and operators and charterers, its successors and assigns and his and their executors, administrators and assigns of all claims, demands, rights and causes of action, of whatsoever kind or nature, arising from or by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries, damage to property, and the consequences thereof resulting, and to result from a certain accident which happened on or about the 15th day of December, 1955. I have had medical and legal advice before signing this release.

"In Witness Whereof: I have hereunto set my hand and affixed my seal the 2nd day of January, in the year one thousand nine hundred and fifty-seven.

"s/Wilbur Gilbert

"Sealed and Delivered in the presence of:

Witness: s/ S. Eldridge Sampliner

Address: 301 Caxton Bldg., Cleveland, O.

Witness: s/ Robert B. Reed

Address: Paducah, Ky.

"Subscribed and sworn to before me this second day of January, A.D., 1957.

s/ Gerald W. Moody

Notary Public

My comm. expires April 13, 1960"

The same counsel, Robert B. Reed and S. Eldridge Sampliner, within just a few months previous to the date of this settlement, had represented Mr. Gilbert in the settlement of a similar claim against the Pan-American Shipping Company resulting from an injury he had sustained while employed as a seaman by that company.

### Conclusions of Law

■ (1) The Court has jurisdiction of the parties and of this action on the part of the plaintiff to secure maintenance and cure, a right of action conferred upon the admiralty jurisdiction of the Court. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; Pacific S.S. Co. v. Peterson, 278 U.S. 130, 49 S.Ct. 75, 73 L.Ed. 220.

■ (2) A seaman may recover maintenance, cure and wages, implied in law as a contractual obligation arising out of the nature of the employment, independently of the right to indemnity or compensatory damages for an injury caused by negligence; these two rights are consistent and cumulative. Pacific S.S. Co. v. Peterson, 278 U.S. 130, 49 S. Ct. 75.

(3) If the plaintiff in this proceeding, Wilbur Gilbert, signed the release on January 2, 1957, while suffering from the effects of the injury which limited his ability to fully comprehend the effect of the release, or when he was not properly represented by counsel, or his injury had been improperly diagnosed by doctors employed by the shipowner and he believed his injuries were not as extensive as they eventually turned out to be, or if he was under an economic strain at the time the release was signed, or was misinformed as to his rights, then the release should be set aside. Clinton v. United States, 9 Cir., 254 F.2d 409; German v. Carnegie-Illinois Steel Corporation, 3 Cir., 169 F. 2d 715. This is a doctrine arising out of the concern of the law to protect seamen, who, as a class, have been described by the Supreme Court as poor, friendless and improvident. Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993; Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239. The latter case is the authority for the rule that the burden lies with the shipowner, where reliance is had upon a release, to show that the release was fairly executed and fairly represents the amount to which the seaman was entitled.

Gilbert made no contention that he was not properly represented by competent counsel on the occasion when the settlement was negotiated, the release executed, and payment of $4,500 was made to him. His contention is that at the time he was under an economic strain brought about by the failure of the defendant to pay his doctors' bills, medical expenses, and wages during the year 1956. He nowhere claims that the defendant was liable under the Jones Act, 46 U.S.C.A. § 688, for damages arising out of any negligence on the part of the defendant attendant upon his injuries sustained in December, 1955.

This action is solely for maintenance and cure. The plaintiff seeks a total of $4,900.85 as the amount due him for maintenance and cure. The small excess in the amount which he now claims over the amount which he received in January, 1957 is not sufficient to justify vacating the settlement or avoiding the release. Represented by competent and efficient counsel, plaintiff understood his rights, and two years ago received substantially the amount which he now claims is due him.

For the reasons herein set forth, the Court concludes that plaintiff's complaint should be dismissed and an order to that effect will be entered.