**Francis Frank GOMEZ, Libelant,**

v.

**ALCOA STEAMSHIP COMPANY, a corporation, Respondent.**

No. 2726.

United States District Court
S. D. Alabama, S. D.

Aug. 3, 1960.

28. See footnote 24, supra.

Ross Diamond, Jr., Diamond, Engel & Lattof, Mobile, Ala., for libelant.

John H. Tappan, Pillans, Reams, Tappan, Wood & Roberts, Mobile, Ala., for respondent.

DANIEL HOLCOMBE THOMAS, District Judge.

Francis Frank Gomez, a seaman seeking the recovery of maintenance and cure allegedly due him, filed this libel in personam against the respondent Alcoa Steamship Company, a corporation organized and existing under the laws of the State of New York and doing business in Mobile, Alabama.

The events giving rise to this litigation are relatively simple.

On April 15, 1959, Gomez, while in the scope of his employment aboard the vessel Alcoa Cavalier, injured a nerve or a muscle in his neck and shoulder and was rendered disabled.

Gomez was separated from the Alcoa Cavalier on April 27, 1959, and was seen as an outpatient at the United States Public Health Service Clinic in Mobile, Alabama. That clinic diagnosed Gomez's injury as a cervical disc and referred him to the Public Health Service Hospital in New Orleans, Louisiana, for treatment and hospitalization. He remained in the New Orleans hospital from May 9, 1959, until he was discharged on May 29 with a notation that he should be able to return to duty within approximately fourteen days.

However, the libelant was not able to return to his duties and once again reported to the United States Public Health Service Clinic in Mobile for treatment. After examination by various doctors, including Dr. Robert T. King, it was determined that Gomez once again be referred to the Public Health Service Hospital in New Orleans. He remained in the hospital on this occasion from July 6 to July 17, 1959, at which time he was discharged as "fit for duty."

Gomez continued to experience the pain in his neck and shoulder after the second stay in the hospital, and advised his employer that he would like to be examined by a private physician in the Mobile area rather than the Mobile Public Health Service Clinic. He was informed by Alcoa's representative that any such treatment would have to be at his own expense.

Dr. King, a private physician who had examined Gomez at the request of the Mobile Public Health Service Clinic prior to the time Gomez had entered the New Orleans hospital on the second occasion, again examined Gomez and found the original condition to be still in existence. Upon Dr. King's recommendation, Gomez was placed in a private hospital in Mobile where he underwent physical therapy for a period of twenty days, from August 12 through August 31, 1959. Subsequent to his release, libelant reported for duty and the pain in his neck subsided. Whether this improvement was obtained through the result of the final hospitalization period or was the cumulative result of all the treatments received, is not within the province of the Court to determine. The fact remains, however, that the libelant did return to duty following this latter hospitalization period and is now recovered.

Gomez received his due maintenance until July 17, when he was discharged as fit for duty from the United States Public Health Service Hospital in New Orleans. He brings this action in an endeavor to recover maintenance for the period July 17 to August 11, 1959, and cure for the medical and hospital expenses incurred as a result of his final hospitalization and treatment.

It has been stipulated between the parties that if the libelant is entitled to recover by this action, he is entitled to $8

per day for the twenty-six day period. His medical expenses for the period in question, including hospitalization, totaled $604.50. There is no question but what these expenses are reasonable.

The respondent resists the libelant's claim on the dual theory that (1) Gomez's action in seeking medical treatment from a facility other than a United States Public Health Service Hospital constituted a refusal of the facilities of that Service, and hence a forfeiture of his right to maintenance and cure, and (2) the obligation of the shipowner to provide maintenance and cure terminated when Gomez attained the maximum cure provided by medical science, nursing and care. There is no question but what these are correct statements of the law,[1] but I do not think them to be applicable to the facts of this case.

■ If Gomez had refused to submit to the treatment afforded by the Public Health Service, I think he would be precluded from recovering maintenance and cure. Murphy v. American Barge Line Co., 3 Cir., 1948, 169 F.2d 61; The Balsa, 3 Cir., 1926, 10 F.2d 408; Calmar S.S. Corp. v. Taylor, 1937, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993. By the same token, if he attained the maximum cure that could have been provided by medical science, I think he would also be precluded from recovery. Dobbs v. Lykes Bros. Steamship Co., 5 Cir., 1957, 243 F.2d 55. However, I am of the opinion that the facts of this case do not warrant such a result.

For a period of some four months, Gomez diligently sought and utilized the facilities of the Public Health Service, spending approximately thirty-four days in the Public Health Service Hospital in New Orleans. That service released him as fit for duty, although he continued to complain of the original pain. The doctor in Mobile who had recommended hospitalization prior to Gomez's second stay in the Public Health Service Hospital, found, upon examination, the condi-

tion still in existence after that service released him as fit for duty. Dr. King recommended hospitalization for a third time, and as a result thereof libelant's pain subsided.

■ I am of the opinion that these facts show that Gomez had not received or attained the maximum cure provided by medical science, nursing and care, so as to relieve the respondent shipowner from its obligation to furnish the seaman with maintenance and cure. The libelant was not suffering from an incurable disease as was the case in Calmar S. S. Corp. v. Taylor, supra, and Peterson v. United States, 9 Cir., 1955, 224 F.2d 748. His condition was such that, according to the testimony of Dr. King, it could be cured with the necessary therapy. The treatment obtained by Gomez at the private hospital gave him relief which he had not received by recourse to the Public Health Service Hospital, and his claims for maintenance and cure are therefore recoverable. See McManus v. Marine Transport Lines, Inc., 2 Cir., 1945, 149 F.2d 969.

■ The facts are equally clear that the libelant did not refuse the facilities of the Public Health Service. His action in requesting additional medical treatment after the Public Health Service had failed to effect a cure, was the action of any reasonable man desirous of having his physical health restored. In the decision of The Balsa, supra, the court states that "expenses actually incurred for treatment beyond that which was given him without cost at such a hospital (Public Health Service Hospital) are recoverable, unless the seaman has rejected the hospital service when available." The facts here do not show a rejection of the hospital service. On the contrary, they show a willingness to cooperate with the Public Health Service in every way until that facility discharged him as fit for duty.

It follows from the foregoing that the libelant is entitled to judgment in the

1. Calmar S.S. Corp. v. Taylor, 1937, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993; Dobbs v. Lykes Bros. Steamship Co., 5 Cir., 1957, 243 F.2d 55; Bailey v. City of New York, 2 Cir., 1946, 153 F.2d 427.

**324**

amount of $604.50 for medical expenses incurred, and the amount of $208 for maintenance for the period July 17 to August 11, 1959, or a sum total of $812.-50 together with interest at the rate of 6% from August 11, 1959, with costs taxed against the respondent.

The foregoing opinion incorporates the Court's findings of fact and conclusions of law under Admiralty Rule 46½, 28 U.S.C.A.