Peter Paul **CASSIDY**, Plaintiff,

v.

**STEAMSHIP AMERICAN FALCON, her engines, boilers, etc. and American Foreign Steamship Corporation, Defendants.**

No. 7355.

United States District Court
E. D. Louisiana,
New Orleans Division.

Feb. 26, 1968.

As Amended March 8, 1968.

Sherman F. Raphael, New Orleans, Edgar N. Quillin, Arabi, La., for plaintiff.

M. D. Yager, New Orleans, for defendants.

RUBIN, District Judge.

## FINDINGS OF FACT

### I.

On December 28, 1964, plaintiff was employed at the Port of New Orleans by defendant as an able-bodied seaman and member of the crew of the SS AMERICAN FALCON, a merchant vessel of United States registry and flag, owned and operated by it.

### II.

On or about January 19, 1965, the SS AMERICAN FALCON was docked in the Port of Piraeus, Greece. The vessel's bosun, Hewitt Parsons, assigned plaintiff to work painting the top of the poop deck awning or canopy, a level roof structure approximately ten feet above the weather deck at the after end of the vessel. The bosun suggested to the plaintiff that he ascend to the top of the awning by climbing upon spare wooden hatch boards that were stacked and securely lashed in stair-step fashion along the forward end of the awning. The arrangement of the hatch boards and the manner in which they were lashed in place provided plaintiff with a safe means of going to and from his place of work. Portable ladders were also available for use, but since the plaintiff had to replenish his supply of paint from time to time, it was easier and safer for him to go to and from the top of the awning using the hatch board steps.

### III.

Plaintiff began work painting the top of the awning at about 8:00 A.M. He used the stair steps formed by the hatch boards to ascend to the awning and he did not ask for a ladder or any other means of access.

### IV.

Later that morning, when plaintiff was returning to the top of the awning after having obtained an additional supply of paint, he lost his balance in attempting to step from the hatch boards to the awning's top and fell to the deck

below. He did not slip or trip, and the hatch boards did not move underfoot.

### V.

The proximate cause of the plaintiff's falling to the deck was his own neglect and want of care in failing properly to ascend the hatch boards and to step from the boards to the awning's top.

### VI.

Following the accident, plaintiff again ascended the hatch boards and resumed painting the top of the awning. Shortly thereafter, however, bosun Parsons, upon inspecting the progress of the work, ordered the plaintiff to stop because he was not properly using the paint. Plaintiff did not report the accident to the bosun, but several days later, after the vessel had proceeded to Turkey, at plaintiff's request a physician was summoned to the vessel. Following examination of the plaintiff, the physician suggested that plaintiff be hospitalized ashore, and accordingly, on January 26, 1965, in Derince, Turkey, plaintiff signed off the vessel in order to be medically treated.

### VII.

Plaintiff was hospitalized and treated at the Admiral Bristol Hospital in Istanbul where his condition was diagnosed as a fracture of the ninth rib. On February 3, 1965, plaintiff was repatriated to New York, New York, and from there he proceeded to New Orleans, Louisiana, reporting to the Outpatient Clinic of the United States Public Health Service Hospital on February 10, 1965.

### VIII.

Plaintiff was treated on an outpatient basis by the United States Public Health Service Hospital in New Orleans from February 10 until February 25, 1965, when he was discharged fit for duty.

### IX.

On March 10, 1965, plaintiff was admitted as an inpatient at the Public Health Service Hospital; he gave a history of having coughed up clots of blood during the preceding eight days. The hospital's diagnoses were nasal polyps, hemoptysis and an additional finding of hearing loss of the left ear present since birth. During the course of the hospitalization, various diagnostic tests were made but essentially no positive findings were obtained. There is no indication from the medical records that the condition for which plaintiff was hospitalized was causally related to the injury sustained almost two months before, and no other medical evidence of such a causal relationship was presented. The plaintiff was discharged fit for duty on April 23, 1965.

### X.

Plaintiff was fit for duty with respect to the injury sustained on board the SS AMERICAN FALCON on February 25, 1965, and any conditions that existed subsequent to that time were neither caused by nor aggravated by the shipboard occurrence.

### XI.

Plaintiff is no longer going to sea, having retired from that occupation because of a diabetic condition unrelated to his service aboard the SS AMERICAN FALCON.

### XII.

Plaintiff was paid earned wages through January 26, 1965, at the rate of $392.58 per month. The costs of plaintiff's repatriation were borne by the defendant.

## CONCLUSIONS OF LAW

### I.

This Court has jurisdiction of the action, and venue is properly laid in the Eastern District of Louisiana.

### II.

The vessel SS AMERICAN FALCON and its gear, appliances and appurtenances were reasonably fit, proper and suitable. In particular, the hatch boards stacked and secured at the for-

ward end of the poop deck awning were reasonably fit, proper and suitable for the use to which they were put. They did not constitute an unseaworthy condition, and plaintiff was provided with a safe means of going to and from his place of work.

### III.

 There was no negligence on the part of any officer or crew member of the SS AMERICAN FALCON that proximately caused or contributed to plaintiff's accident and injury.

### IV.

The proximate cause of plaintiff's accident and injury was his own neglect.

### V.

Inasmuch as plaintiff's accident and injury were not caused or contributed to by defendant's negligence or by the unseaworthiness of the vessel, plaintiff is not entitled to damages either under the Jones Act, 46 U.S.C.A. Sec. 688, or under the general maritime law.

### VI.

The plaintiff is entitled to wages and to maintenance and cure for the period ended on February 25, 1965, when plaintiff was discharged from the United States Public Health Service Hospital, for at that time there had been effected such improvement in his condition as reasonably could be expected to result from nursing, care and medical treatment. Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949); Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938); and Warren v. United States, 75 F.Supp. 836 (D.C. Mass.1948).

### VII.

The plaintiff is entitled to maintenance benefits, payable at the rate of $8.00 per day during the period of his outpatient convalescence at the United States Public Health Service Hospital, February 10 to February 25, 1965.

A proposed judgment will be prepared by counsel for the plaintiff and submitted to counsel for the defendant. If counsel are in agreement on the form of judgment, they will present it to the Court; otherwise they will notify the Court.