502

Doyle FOSTER

v.

MORRIS BROTHERS BOAT COMPANY.

Civ. A. No. 69-637.

United States District Court,
E. D. Louisiana,
New Orleans Division.
March 24, 1972.

Jude St. Romain, of LaBorde & St. Romain, Marksville, La., for substituted plaintiffs.

James C. Walker, Jr., of Watkins, Watkins & Walker, Houma, La., for defendant.

CHRISTENBERRY, District Judge

Doyle Foster brought this suit for damages, under the Jones Act for negligence, and under the general maritime law for unseaworthiness and for maintenance and cure and damages for failure to pay maintenance and cure. Mr. Foster died on August 8, 1971, and subsequently, his wife, Mabel R. Foster, and his only child, Leroy Doyle Foster, Jr., were properly substituted as parties plaintiff. Thereafter, all claims arising out of the alleged negligence of the defendant, the alleged unseaworthiness of the vessel, and the damages for nonpayment of maintenance and cure were settled amicably.

Following a pretrial conference on December 10, 1971, defendant paid to Mr. Foster on January 26, 1971, the sum of $720.00 for ninety days of maintenance and cure at the rate of $8.00 per day. The only unresolved issue is whether additional maintenance and cure is owed by defendant and, if so, for what period of time. Plaintiffs contend that the payment should be up to the time of Mr. Foster's death, or an additional period of 1,108 days, i. e., through August 7, 1971. Defendant, on the other hand, claims that its responsibility to pay maintenance and cure terminated on October 25, 1968, and that it is not indebted to the plaintiffs for any additional maintenance and cure. By stipulation of the parties, the maintenance and cure claim was submitted to the court to be

decided without a jury on depositions and briefs.

Mr. Foster was employed on the defendant's quarter boat "KIM" as a seaman and member of the crew in the capacity of a deck hand. On July 25, 1968, while aboard the quarter boat "KIM" and a barge which was at all times attached to the "KIM" which were docked on Bayou Cocadrie, Terrebonne Parish, Louisiana, plaintiff suffered what was, according to the doctors, undoubtedly a myocardial infarction with an atrial flutter. A myocardial infarction, also known as a coronary occlusion, has to do with an underlying condition that has been present previously, in this case, arteriosclerosis. It can occur either in employment or in complete rest and the evidence does not establish that Mr. Foster's attack was caused by the work he was performing.

After his attack plaintiff was taken to the emergency room of the Terrebone General Hospital. He had severe chest pains for approximately two hours before being received there. At the hospital he was under the care of Dr. Ray Cinnater of Houma, Louisiana, and remained in the hospital until discharged on August 15, 1968, because he wished to reside in Baton Rouge, Louisiana, for his own convenience. Dr. Cinnater referred him to Dr. James E. Hand of Baton Rouge, an internist. At the time of his release from the hospital he had made significant improvement in his myocardial infarction but of course not in his arteriosclerosis.

Dr. Hand saw plaintiff on two occasions; first, on August 27, 1968, and again on September 17, 1968. On the latter visit Dr. Hand found him completely free of symptoms with respect to the infarction, although plaintiff had not yet reached maximum recovery. On this visit plaintiff told the doctor that he had a light job arranged in Marksville, Louisiana, consisting of a paper route on which he would drive an automobile with a helper who would do the lifting and perform the other necessary activities. Dr. Hand gave plaintiff a letter to be presented to any subsequent physician he might consult, giving details of his illness and the drugs that he was taking. Dr. Hand testified that at that time, seven and a half weeks after the attack, plaintiff had not reached maximum recovery but could be expected to continue to improve until about three months after the date of the attack.

Plaintiff left Baton Rouge and undertook the paper route in Marksville. He next consulted Dr. Elliot C. Roy of Mansura, Louisiana. He first saw Dr. Roy on October 2, 1968. Dr. Roy's opinion concerning the nature of plaintiff's attack and as to his condition did not differ from those of Drs. Hand and Cinnater. Dr. Roy continued Mr. Foster on virtually the same course of medication which he had been receiving except for a substitution or two of similar drugs where the ones he had been taking produced an allergic reaction. Apparently, Mr. Foster had reached a plateau and Dr. Roy sought to keep him there. Mr. Foster did well until June, 1969, when he brought to the attention of Dr. Roy shortness of breath and edema which indicated congestive heart failure.

The seaman's right to maintenance and cure extends to a date when maximum cure possible has been achieved. 2 M. Norris, The Law of Seamen, § 563, p. 72 (3d ed. 1970), and cases cited therein. The questions to be answered here then are at what time did Mr. Foster attain maximum cure of his myocardial infarction, whether or not he has been paid maintenance and cure to that time, and if not, what amount remains to be paid.

As stated, Dr. Hand found that Mr. Foster was completely free of symptoms on September 17, 1968, and testified that Mr. Foster could be expected to improve for the balance of time up to about three months, which I understand to mean three months after the attack. That would be about November 25, 1968.

Dr. Rufus Craig, an internist who specializes in cardiology, first saw Mr. Foster on February 15, 1971. Dr. Craig

saw him again in May, 1971, and testified that on the occasions that he examined Mr. Foster, Mr. Foster was not suffering congestive heart failure, although Dr. Roy, the treating physician in June, 1969, found symptoms which indicated congestive heart failure. Dr. Craig expressed the opinion that the repairative process, the production of new blood vessels to replace the one obstructed by the infarct may take four to six months or longer.

 From the foregoing it will be seen that the medical picture here is a confused one. However, considering all of the medical evidence, I find that Mr. Foster reached maximum cure possible of his myocardial infarction four months after his attack which occurred on July 25, 1968, that is to say, on November 25, 1968.

It is true that Mr. Foster continued to have arteriosclerosis, an incurable disease. The medical testimony did not establish the precise and direct cause of death and although the death certificate placed into evidence by the plaintiffs gives the cause of death as coronary occlusion, it is clear that the coronary occlusion referred to was not the one suffered by Mr. Foster on July 25, 1968. In the case of Calmar Steamship Corporation v. Taylor, 303 U.S. 525, 530, 58 S.Ct. 651, 654, 82 L.Ed. 993 (1938), the Court considered the question of the extent of maintenance and cure due a seaman suffering from an incurable disease and stated:

"We can find no basis for saying that, if the disease proves to be incurable, the duty extends beyond a fair time after the voyage in which to effect such improvement in the seaman's condition as reasonably may be expected to result from nursing, care, and medical treatment. This would satisfy such demands of policy as underlie the imposition of the obligation."

From the date of his accident until August 15, 1968, Mr. Foster was in the hospital with the charges having been paid by the defendant or its insurer. That being true, he was not entitled to maintenance and cure for that period of time. Black v. United States, 74 F. Supp. 62 (W.D.Wash.1947); *cf.* Ward v. American President Lines, 95 F.Supp. 609, 610 (N.D.Cal.1951). He was entitled to maintenance and cure from August 15, 1968, to the date of maximum cure, November 25, 1968, both dates inclusive, a period of 102 days at the rate of $8.00 per day; this amounts to $816.00. He was paid the sum of $720.00 for 90 days of maintenance and cure at the rate of $8.00 per day. This leaves the amount of $96.00 due and owing and a judgment in that amount will be entered for the plaintiffs and against the defendant, with interest from the date of judgment.