103 F.2d 437 (1939)
THE S. S. STANDARD.
BONICI
v.
STANDARD OIL CO. OF NEW JERSEY.
No. 314.
Circuit Court of Appeals, Second Circuit.
April 17, 1939.
Silas B. Axtell, of New York City, for libelant.
Vernon S. Jones, of New York City (Kirlin, Campbell, Hickox, Keating & McGrann and Nicholas D. Lamorte, all of New York City, of counsel), for respondent.
Before L. HAND, CLARK, and PATTERSON, Circuit Judges.
CLARK, Circuit Judge.
Libelant, Edwin Bonici, was employed as messman on the respondent's steamship "Standard," and while at work at sea on February 7, 1938, slipped and fell, injuring his left shoulder. At the close of the voyage on February 22, 1938, he entered the United States Marine Hospital at Stapleton for treatment of his injury. He remained there until March 16, 1938, when he was discharged. On March 23, 1938, having been paid a total of $89.45, he signed a general release of all claims which he had or might have against the respondent. Thereafter he had further trouble with his shoulder, necessitating out-patient treatment at another hospital, which continued until he was able to ship on another vessel on July 8, 1938.
As the case was ultimately presented to the court, this libel was limited to a claim for Bonici's maintenance and cure between March 16 and July 8, 1938. Originally there was also a claim for damages for injuries sustained on the ground that the accident was caused by respondent's negligence. But this was withdrawn at the trial, counsel stating that he thought the release covered all claims based on negligence. Further, the court made a specific finding that respondent was not negligent and the vessel was not shown to be unseaworthy. The issue presented was *438 as to the binding force of the release. The court held that the libelant could not give away, or release away, his right to maintenance and cure, and therefore made him an award at the rate of $2 per day for the period, amounting in all to $228. This appeal challenges the ruling as to the release.
In form, by the use of red and black type in appropriate places and by filling in blanks with typewriter and pen, and in content, by reason of its extensive protestations, the release presented to the libelant for signing was made as extensive as human and legal ingenuity could make it. In some dozen or more places the releasor gives assurance that he realizes he is signing away all rights and claims which he now has or may hereafter have, that he has read the paper and knows what he is signing, and ultimately that he knows "that signing this paper settles and ends every claim" he has "for damages, as well as for maintenance, cure, and wages." Libelant is a person of some education, able to read and write, and the court held, as indeed his counsel conceded, that he knew he was signing a general release. He testified, however, that he did so because the doctor for respondent told him that there was nothing the matter with his arm and that he would be ready to work in five or ten days. He testified further that the doctor told him he should have his tonsils out. This is borne out by the doctor's report dated March 16, 1938, in which the doctor states that Bonici does have infected tonsils, and that if he has the pains complained of about the left scapula and about the left elbow not connected with the left shoulder, they are due to toxemia from bad tonsils and are not related to trauma. The doctor adds that this opinion was expressed to Bonici.
The court held the release to be ineffective as against the seaman's claim for maintenance and cure, on the authority of Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 654, 82 L.Ed. 993.[1] But we feel that this is an unwarranted interpretation of the Calmar case, which does not go so far. It does hold for the first time in the Supreme Court, what had already been ruled in the lower federal courts, that the shipowner's obligation to his seaman for maintenance and cure, or care, might outlast the voyage when the seaman had suffered illness during his service and continue for "a fair time" "in which to effect such improvement in the seaman's condition as reasonably may be expected to result from nursing, care, and medical treatment." And it held (approving The Mars, 3 Cir., 149 F. 729, 730, and Wilson v. Manhattan Canning Co., D.C.W.D.Wash., 205 F. 996, 997) that the allowance might include small amounts to cover future maintenance and cure of a kind and for a period which can be definitely ascertained.
We think the rule to be applied is that which apparently prevails generally as to seamen's releases in admiralty, namely, that such releases are not wholly invalid, but are jealously scrutinized to see that these "wards of the admiralty" have not been overreached. The tender consideration of admiralty for these "favorites" of the court who are "a class of persons remarkable for their rashness, thoughtlessness, and improvidence" (Story, J., in Brown v. Lull, C.C., 4 Fed.Cas. 407, 409, No. 2018) has been emphasized once again in the recent case of Socony Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. ___, affirming 2 Cir., 96 F.2d 98, in holding the common law doctrine of assumption of risk not a defense to a seaman's action for personal injury. See also Calmar Steamship Corp. v. Taylor, supra; Cortes v. Baltimore Insular Line, 287 U.S. 367, 377, 53 S.Ct. 173, 77 L.Ed. 368; The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760. A classic statement of the rule appears in Mr. Justice Story's opinion in Harden v. Gordon, C.C., 11 Fed.Cas. 480, No. 6047, at page 485, where he states that, while seamen are "not technically incapable of entering into a valid contract, they are treated in the same manner, as courts of equity are accustomed to treat young heirs, dealing with their expectancies, wards with their guardians, and cestuis que trust with their trustees." And there he held invalid a stipulation limiting the shipowner's responsibility for medicine and medical care to that furnished by the medicine chest on board ship.
Hence, while "one who claims that a seaman has signed away his rights to what in law is due him must be prepared *439 to take the burden of sustaining the release as fairly made with and fully comprehended by the seaman" (Harmon v. United States, 5 Cir., 59 F.2d 372, at page 373), nevertheless a release fairly entered into and fairly safeguarding the rights of the seaman should be sustained. Any other result would be no kindness to the seaman, for it would make all settlements dangerous from the employer's standpoint and thus tend to force the seaman more regularly into the courts of admiralty. Even if a seaman is the court's ward, the court cannot be always at hand to watch over him, for it can only move ponderously in a formal lawsuit. Fair settlements are in the interest of the men, as well as of the employers. This conclusion is substantiated by the fact that Congress when it legislated as to one form of releases, namely, those for wages, nevertheless did so on the basis that the release was good until set aside, for it provided that "any court having jurisdiction may upon good cause shown set aside such release and take such action as justice shall require." Act of Mar. 4, 1915, c. 153, § 4, 38 Stat. 1164, 1165, 46 U.S.C.A. § 597; Pacific Mail Steamship Co. v. Lucas, 258 U.S. 266, 42 S.Ct. 308, 66 L. Ed. 614.
We think, therefore, that the trial court should not have held a seaman's release as always inoperative, but should have considered this release from the standpoint of the fairness of the conditions under which it was secured and of the settlement which it constituted. In view, however, of the evidence in the record bearing upon the taking of the release and of the small award made, we feel that we should dispose of the matter without requiring a new trial. The evidence is clear, as the doctor for the respondent showed in his report, that the injury was considered much less serious at the time the release was given than it eventually turned out to be. The release was signed because of the advice given by the respondent's doctor. As it turned out, nearly four months' additional care was needed before the libelant could go back to work, during which time he was in dire need of ordinary maintenance. A release induced by the diagnosis given by the employer's doctor should not prevent the award of additional maintenance when the diagnosis is shown to have been erroneous, even though it may have been quite honestly made. In the case of Great Northern R. Co. v. Fowler, 9 Cir., 136 F. 118, a release given by a railroad brakeman to his employing railroad was set aside because of the erroneous conclusion of the company's doctor as to the extent of his probable injuries. Certainly the solicitude of admiralty for its wards should be as great as that of the general courts for the servants of a railroad. See also Lion Oil Refining Co. v. Albritton, 8 Cir., 21 F.2d 280, and cases there cited; Miles v. Lavender, 9 Cir., 10 F.2d 450; Johnson v. Chicago, M. & St. P. R. Co., D.C.W.D. Wash., 224 F. 196. Among cases which show the jealous scrutiny accorded seamen's releases may be cited Columbia River Smoked Fish Co. v. Lovsteen, 9 Cir., 20 F.2d 122; Rivers v. Lockwood, D.C. E.D.S.C., 239 F. 380; The Henry S. Grove, D.C.Md., 22 F.2d 444.
We think, therefore, that maintenance for the additional period of disability should be awarded. It is true that the amount paid the libelant at or before the giving of the release was somewhat in excess of maintenance then accrued, but the court was justified in holding that the additional amount was given to secure a release covering, among other things, the claim for damages for negligence. Under the circumstances we think the award was reasonable and should be sustained.
Affirmed.
NOTES
[1] It also relied on an unreported opinion of District Judge Inch in the case of Isakson v. Farley, rendered June 24, 1938.