**BANDY v. KEYSTONE SHIPPING CO. et al.**
**No. 249 of 1949, Admiralty.**

United States District Court,
E. D. Pennsylvania.

April 30, 1951.

986

Freedman, Landy & Lorry, Philadelphia, Pa., for plaintiff.

Krusen, Evans & Shaw, Philadelphia, Pa., for defendants.

KIRKPATRICK, Chief Judge.

On October 22 or 23, 1948, the libellant, while at sea, sustained an injury consisting of a strain or, possibly, sprain of his back.

He brought a civil action at law for damages and also this suit in admiralty for cure and maintenance. At the trial of the civil action, it appeared that on January 18, 1949, he received the sum of $350 from the respondent in satisfaction of all claims and executed a general release. The jury found that the release was valid. In view of the instructions of the Court (as to which no complaint has been made) that finding meant that the release was fair and adequate, executed freely, without deception, coercion or overreaching, after full disclosure of facts, fully comprehended by the libellant with an understanding of his rights.

This admiralty case, in accordance with the usual practice, has been submitted to the Court upon the record of the civil action. I agree with the jury in the civil action and make the finding in this suit that the release was valid and binding.

The libellant's principal argument against its validity is based on the contention that it was inadequate in amount. He argues that, in addition to damages, he would ultimately have been entitled to maintenance and cure (plus return transportation to Philadelphia) in the total amount of $660.

In Bonici v. Standard Oil Co. of New Jersey, 2 Cir., 103 F.2d 437, the court, although it set aside the release in that case as inadequate, made it clear that it did not agree with the trial court that a seaman's release of maintenance and cure is always inoperative if given for less than the maximum amount to which he would be entitled, and held that the validity of every release is to be tested by considerations of the fairness of the conditions under which it was secured and of the settlement which it constituted.

In the present case I am satisfied that the libellant was getting almost, if not quite all, that he was entitled to.

His claims for damages and for return transportation were disputed and, in the light of the testimony taken at the trial of the civil action, the claim for damages was, in my judgment, worthless. The transportation claim was at most $96.47. He was undoubtedly entitled to maintenance and cure, but the amount was then unliquidated and I do not think that it was much, if at all, in excess of the $350 he was paid. He had had one treatment for his injured back, in Puerto Rico, before the voyage ended. After the voyage (which ended on November 5), he was treated at the United States Marine Hospital at Galveston on three successive days, November 8, 9 and 10; he was treated once in December, on the 26th, and once in January, on the 2nd. He was also at the hospital on January 12 but apparently went there only to get a clinical abstract. He shipped out again on January 23.

It certainly throws a good deal of doubt upon the libellant's testimony as to the extremely painful and disabling nature of his injury to note that he did not even report for treatment for a period of nearly six weeks, from November 10 to December 26, as also does the fact that on December 17, 1948, about five weeks after the accident, he applied for a job at the Texas Employment Commission certifying "I am able to work and available to work."

Before the release was signed, the respondent's physician, on January 17, made a thorough physical examination of the libellant. The physician testified that at that time the libellant had fully recovered from his injury and was able to go to work, with which conclusion the libellant expressed agreement. The doctor did not give any opinion as to how long before the examination full recovery had taken place. He testified that the only symptom of injury present was that "On extreme pressure he would point to a small spot in the lower part of his back." The libellant had an arthritic condition of long standing, having nothing to do with the accident, which might account for the existence of sensitive areas. He was again examined in May, 1949, by a doctor for the respondent, who said that he found some pain but no evidence of any injury or sprain at that time.

In view of the fact that the libellant was clearly not telling the truth about what was said to him about the nature of the release at the time he signed it, I am inclined to discount, if not disregard, his testimony relating to his inability to work during February and March of 1949. There is no supporting evidence of this part of his story.

Besides all this, a seaman is not entitled to payments for maintenance and cure continuing after any given point, unless his condition is susceptible of further improvement by medical treatment. Even though it could be found that the libellant had some pain as the result of his injury extending for several months, there is nothing to show that the back sprain had not, even earlier than January 18, 1949, reached the point where further treatment would not do any good.

I find that, under all the circumstances, the amount which the libellant received was fair and adequate consideration for all the rights released, and that being so, I think it unimportant that the various rights which he might have asserted were not explained to him seriatim. I am satisfied that he fully comprehended that he was signing a general release and that his statement that he thought it was a receipt, not binding him to give up anything, is mere pretense.

A decree may be submitted.