Chris LAW, Plaintiff-Appellant,

v.

UNITED FRUIT COMPANY, Defendant-Appellee.

No. 80, Docket 25224.

United States Court of Appeals Second Circuit.

Argued Jan. 8, 1959.

Decided March 2, 1959.

Mack Kreindler, New York City (Benjamin Glickman, New York City, on the brief), for plaintiff-appellant.

Eugene Underwood, New York City (Burlingham, Hupper & Kennedy, New York City, on the brief), for defendant-appellee.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and GIBSON, District Judge.

MOORE, Circuit Judge.

Plaintiff (appellant), a seaman injured while working on a vessel operated by defendant, sued for damages (first cause of action) and for maintenance and cure (second cause of action). As a complete defense to both causes of action defendant pleaded a general release. Plaintiff appeals from a judgment in favor of defendant entered (1) upon a jury verdict against him after a trial on the first cause of action, and (2) upon the court's decision against him on the second cause of action for maintenance and cure.

To the question submitted in the first cause of action, "Did the plaintiff effectively release the defendant from liability for damages?" The jury gave the answer "Yes." The trial court reserved for itself the decision on the second cause of action and concluded that plaintiff effectively released defendant from liability for all future claims for maintenance and cure.

Plaintiff now raises the question whether as a matter of law he could effectively have released defendant from all future claims for maintenance and cure where it developed that further treatment was required after he had signed the release. He urges as a proposition of law that "A seaman can never release the shipowner from future maintenance and cure."

Plaintiff was injured on March 23, 1956. He was hospitalized until April 3, 1956 and received out-patient treatment until May 4, 1956. On May 8, 1956 he executed a general release. For the period from April 4, 1956 to May 7, 1956 plaintiff had been paid maintenance. Upon signing the release he received an additional $300.

The law with respect to seamen's releases has been quite definitely stated both in this circuit and in the Supreme Court. In Bonici v. Standard Oil Co. of New Jersey (The S.S. Standard), 2 Cir., 1939, 103 F.2d 437, certiorari denied 1939, 308 U.S. 560, 60 S.Ct. 106, 84 L.Ed. 471, the court said: "We think the rule to be applied is that which apparently prevails generally as to seamen's releases in admiralty, namely, that such releases are not wholly invalid, but are jealously scrutinized to see that these 'wards of the admiralty' have not been overreached" (103 F.2d at page 438). The court continued, saying, "nevertheless a release fairly entered into and fairly safeguarding the rights of the seaman should be sustained. * * * Fair settlements are in the interest of the men, as well as of the employers" (at page 439). Shortly thereafter the test of validity was defined as "whether

the seaman, if he is acting alone, has intelligence enough fully to understand the situation and the risk he takes in giving up the right to prosecute his claim or whether, if he is acting under advice, that advice is disinterested and based on a reasonable investigation." Sitchon v. American Export Lines, Inc., 2 Cir., 1940, 113 F.2d 830, 832, certiorari denied 1940, 311 U.S. 705, 61 S.Ct. 171, 85 L.Ed. 458. A year later after a lengthy historical review of the status of the seaman Judge Frank concluded that, although the validity of a release should not be determined on a motion for summary judgment, a release could be sustained upon a trial "at which the burden will be on the appellee to sustain the release 'as fairly made with and fully comprehended by the seaman' (citing cases)." Hume v. Moore-McCormack Lines, Inc., 2 Cir., 1941, 121 F.2d 336, 347, certiorari denied 1941, 314 U.S. 684, 62 S.Ct. 188, 86 L.Ed. 547. The Supreme Court in Garrett v. Moore-McCormack Co., Inc., 1942, 317 U.S. 239, 248, 63 S.Ct. 246, 252, 87 L.Ed. 239, reiterated the law, saying that the burden was on the party relying upon the release "to show that it was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights."

■ The trial court in its charge correctly stated the factors to be taken into consideration as enunciated in the decisions cited. A portion of the charge illustrates the care with which the court instructed the jury on this point. The court charged:

"Whether it is valid or not depends on many factors. To be valid it must have been executed by the plaintiff freely with full understanding of his rights and without deception or coercion on the part of the defendant. More than that, a release made by a seaman is to be carefully scrutinized to see that the seaman has not been overreached. On the other hand, a release fairly entered into and fairly safeguarding the rights of the seaman must be considered valid."

As to plaintiff's condition, both mental and physical, at the time of signing the court said:

"In other words, you are to consider whether the plaintiff had enough intelligence fully to understand the situation and the risk he took in giving up the right to prosecute his claim. You may also consider what the knowledge of the parties was as to the seriousness of the injuries and whether the amount he received was adequate in view of the situation as it appeared at that time.

"There is no evidence in the case that the plaintiff was intoxicated, but in considering whether the plaintiff fully understood the situation at the time of signing the release, you may consider testimony that he drank a few beers and whiskeys prior to the signing."

Burden of proof was properly stated:

"As to the matter of proving the validity of the plaintiff's release, the burden of proving its validity is upon the defendant."

The jury had before it all the facts from which it could properly evaluate the circumstances under which the release was executed.

■ The court's findings as to the effect of the release on the maintenance and cure cause of action are amply supported by the evidence. As this court said in Bonici v. Standard Oil, supra, to change the law as plaintiff would have it, namely, to declare that a release of future maintenance and cure could never be valid, "would be no kindness to the seaman" because "[f]air settlements are in the interest of the men, as well as of the employers" (103 F.2d at page 439).

The judgment is affirmed.

GIBSON, District Judge (concurring and dissenting in part).

I concur as to that part of the majority opinion that upholds the validity of the release as to damages.

But with great temerity—and all respect to the great and learned Courts of the Second and Ninth Circuits which have held that a seaman may, in appropriate circumstances, release his rights as to future maintenance and care (See Bonici v. Standard Oil Company of New Jersey, 2 Cir., 103 F.2d 437, certiorari denied 1939, 308 U.S. 560, 60 S.Ct. 106, 84 L.Ed. 471, and Clinton v. United States, 9 Cir., 254 F.2d 409), I must dissent.

As Justice Story so picturesquely stated many years ago—seamen are "wards of the admiralty * * *" or such as "young heirs, dealing with their expectancies, wards with their guardians, and cestui que trust with their trustees." Harden v. Gordon, 11 Fed.Cas. at pages 480, 485, No. 6,047. Justice Story's description of seamen and their relationship to the shipowner are quoted with approval by Justice Black in the unanimous opinion of the Supreme Court in Garrett v. Moore-McCormack Co., Inc., 317 U.S. 239, 246, 63 S.Ct. 246, 87 L.Ed. 239.

Our Supreme Court in Calmar S.S. Corp. v. Taylor, 303 U.S. 525, at pages 530, 531, 58 S.Ct. 651, at page 654, 82 L.Ed. 993, had this to say: "The award of a lump sum in anticipation of the continuing need of maintenance and cure for life or an indefinite period is without support in judicial decision. Awards of small amounts to cover future maintenance and cure of a kind and for a period definitely ascertained or ascertainable have occasionally been made."

In this instance, the Trial Court, after approving the jury's verdict upholding the release as to damages, held as a matter of law that the release was also effective as to future maintenance and cure. The Trial Court made no careful examination and analysis of the need of the appellant for future maintenance and cure for a definite ascertainable period. Yet the evidence discloses that within one week after the plaintiff signed the general release (May 8, 1956), he became an inpatient at the U. S. Marine Hospital, and remained such until June 20, 1956. This was for treatment for the injury received as a seaman. He continued to receive outpatient or inpatient treatment for this injury until discharged from this hospital on August 23, 1956, as "not fit for duty."

The Calmar case further states, 303 U.S. at pages 531, 532, 58 S.Ct. at page 655, that the "seaman's recovery must therefore be measured in each case by the reasonable cost of that maintenance and cure to which he is entitled at the time of trial, including, in the discretion of the court, such amounts as may be needful in the immediate future for the maintenance and cure of a kind which can be definitely ascertained.

"The court below has made no findings sufficient to enable us to fix the amount which respondent is entitled to recover. The decree is accordingly reversed, and the cause remanded for further proceedings in conformity with this opinion, and without prejudice to any later suit by respondent to recover maintenance and cure to which he may then be entitled."

Certainly if a court may not approve any award for future maintenance and cure without careful consideration, how may one uphold the right of a seaman—as a ward—a young heir—or a *cestui que* trust of a court to happily and blithely, and mayhap filled with too much beer, release his rights to future maintenance and cure at a time well ahead of that when an intelligent finding can be made as to his future need of maintenance and cure.