**Eugene J. ZOLDAN, Plaintiff,**

v.

**AMERICAN EXPORT ISBRANDTSEN LINES, INC., Defendant.**

**No. 66 Ad. 226.**

United States District Court
S. D. New York.

Jan. 27, 1969.

Abraham E. Freedman, New York City, for plaintiff.

Haight, Gardner, Poor & Havens, New York City, for defendant.

CANNELLA, District Judge.

Action by plaintiff, a merchant seaman, to recover maintenance and cure benefits for a period from December 10, 1965 to January 19, 1966, in the sum of $320.00. Defendant essentially defends on ground that plaintiff, by General Release, settled his claim. Judgment for the defendant.

■ The Court has jurisdiction since this is a typical seaman action for maintenance and cure under the General Maritime Law.

The parties have essentially stipulated the facts in this case.[1] The Court finds that plaintiff was employed as a waiter aboard defendant's vessel, the S.S. Independence from December 9, 1964 to January 3, 1965. During the voyage plaintiff injured his right elbow on December 18, 1964. He received outpatient treatment for this elbow at the U.S. Public Health Service from January 4, 1965 until he was declared "Fit for Duty" on February 15, 1965. For that period he received as maintenance and cure, the sum of $336.00. Thereafter, on April 8, 1965, plaintiff instituted a suit for damages by his attorney, in the United States District Court for the Southern District of New York to recover damages for the right elbow injury. On July 20, 1965 plaintiff signed a General Release in exchange for the amount of $2,336.00 after a settlement of his claim was consummated between the attorneys for the parties. The General Release was witnessed by Charles Sovel, Esq., who is also present counsel. On October 22, 1965, plaintiff rejoined the S.S. Independence as a waiter. During his second consecutive trip aboard the vessel, plaintiff reported for treatment with pain in his right elbow. He obtained a Master's Certificate at the conclusion of the voyage on December 9, 1965. He reported for further outpatient treatment at the U.S. Public Health Service from December 10, 1965 through January 19, 1966, a period of forty days. Thereafter, he was declared "Fit for Duty" regarding his right elbow. Since then he has had no difficulty with his elbow.

The General Release in question is a standard form release generally referred to as a "Red Form" General Release. At the top, in one-quarter inch red printing is written, "THIS IS A GENERAL RELEASE". Immediately following in one-eighth inch red printing appears "WARNING—READ CAREFULLY . . ." and then continues on, "By signing this paper YOU AGREE to give up every right against all the parties and vessels mentioned in this paper which you ever had, you now have, or *you may in the future have* because of any matter or any thing which ever happened from the beginning of the world up to the time you sign this paper." (Emphasis Supplied). In the body of the release there appears in one-quarter inch red printing, "THIS IS A RELEASE" and following this in one-eighth inch black printing, "I know that in signing this release I am taking

1. Pretrial order, dated September 14, 1967.

the risk that I may have other injuries, illnesses or disabilities that I do not know of from the particular occurrence described above or from some other occurrence before the signing of this paper. I also know that I am taking the risk that the injuries, illnesses or disabilities I do know of may be or may turn out to be worse than they now seem to me or to the doctors I have seen. *I take all these risks. I know I am giving up the right to any further money.* I am satisfied. I understand and agree that the money paid to me now is received by me in full settlement and satisfaction of all claims and demands whatsoever." (Emphasis Supplied). Following this legend, in red print there follows: "The following is to be filled in by the Claimant himself in his own handwriting, if he can write * * *." Section 5 of this, in red, reads as follows: "Do you know that signing this paper settles and ends EVERY RIGHT AND CLAIM YOU HAVE FOR DAMAGES AS WELL AS FOR PAST, PRESENT AND *FUTURE* MAINTENANCE, CURE, AND WAGES?" (Emphasis Supplied). The answer in the plaintiff's own handwriting, is "Yes". Following this there appears in three-quarter inch red printing "THIS IS A RELEASE" and a line appears half way through this printing, and the plaintiff signed on this line. The General Release was witnessed by three people, including the plaintiff's counsel and acknowledged before a Notary Public.

It is well settled law that the burden is upon one who sets up a seaman's release to show that it was executed freely, without deception or coercion and that it was made by the seaman with full understanding of his rights. Garrett v. Moore-McCormack Company, Inc., 317 U.S. 239, 247, 63 S.Ct. 246, 87 L.Ed. 239 (1942); Law v. United Fruit Company, 264 F.2d 498 (C.A.2 1959); Kelcey v. Tankers Company, Inc., 217 F.2d 541 (C.A.2 1954).

The plaintiff in this proceeding is represented by the same lawyer who represented him in the original action. In that action a complaint and a summons, dated April 8, 1965 was served. In paragraph 8 of the complaint the plaintiff asserts "he has in the past been and will in the future be obliged to expend monies and incur obligations for medical care and attention; he has in the past suffered and will in the future continue to suffer * * * he has in the past been and will in the future continue to be disabled from performing his usual duties, occupations and avocations." This is what plaintiff was paid for and for which he signed the General Release.

Although the plaintiff returned to this country from Italy when he was 11 years old, he did attend local schools and was educated through eighth grade, at which time he went to work. He served in the Armed Forces and was honorably discharged as a private first class. He was employed at a well known restaurant in New York City for ten years as a waiter and then sailed on ships for about 3 years in the capacity of a waiter. In obtaining this employment he spent many days at the Union Hall and had occasion to discuss general maritime matters with his colleagues. Since leaving the ship he has become a Captain in a well known restaurant in New York City. In short this plaintiff is not naive.

At the time of negotiating his settlement in the original case he had the benefit of able counsel. The Court finds that there is no evidence at all of overreaching or inadequacy. The pain which occurred after the settlement of the original case was a recurrence of the condition for which he had already been paid. In that case he was paid $2,000.00 over the then due maintenance and cure of $336.00. It is clear that the General Release covers this recurrent condition and that the defendant at that time bought his peace from just this kind of happening. There is no claim that there was any intervening cause other than the return to employment doing essentially the same kind of work. Specifically, there was no claim of any other accident causing this condition.

The Court finds that the defendant has more than sufficiently sustained the burden of proving that the General Release was one which should be given effect. The Court finds that the General Release was a fair one, that there was no overreaching, that there was no coercion, and that both parties knew exactly what they were settling. To find otherwise in this situation would open Pandora's Box to the detriment of other seamen who would find great difficulty in persuading ship owners to settle their claims. As the Court of Appeals said in Bonici v. Standard Oil Co., 103 F.2d 437, in this Circuit:

"Any other result would be no kindness to the seaman, for it would make all settlements dangerous from the employer's standpoint and thus tend to force the seaman more regularly into the courts of admiralty. Even if a seaman is the court's ward, the court cannot be always at hand to watch over him, for it can only move ponderously in a formal lawsuit. Fair settlements are in the interest of the men, as well as of the employers."

Similarly, in Sitchon v. American Export Lines, Inc., 113 F.2d 830 (2 Cir. 1940), the Court of Appeals said:

"When a seaman has made a settlement after full investigation and with independent advice, we can see no ground for holding it invalid. The question in any case is whether the seaman, if he is acting alone, has intelligence enough fully to understand the situation and the risk he takes in giving up the right to prosecute his claim or whether, if he is acting under advice, that advice is disinterested and based on a reasonable investigation. Here the seaman and his attorney before making the settlement relied on two examinations by the Marine Hospital and the defendant made no separate examination. Each party entered into a settlement based on identical information and conducted in the fairest manner.

\*　\*　\*　\*　\*　\*

The release here contemplated a settlement of claims for all present and future damages arising out of the accident. The settlement does not bear the slightest taint of fraud and if there was a mistake as to the nature or extent of the injuries, and the judge in the court below seems to have thought there was none, the release accompanying a settlement fairly arrived at was a bar to plaintiff's action."

The point made by the plaintiff that future maintenance and cure claims may not be released under the circumstances of this case, is not well taken. The question of whether as a matter of law a seaman can release an employer from all future maintenance and cure where it develops that further treatment is required after he signs a release was decided by our Court of Appeals affirmatively in Law v. United Fruit Company, 264 F.2d 498 (2 Cir.1959).

Judgment for the defendant.

So ordered.